## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>STATE OF MINNESOTA and<br>KEITH ELLISON, in his official capacity<br>as Minnesota Attorney General,<br><br>*Defendants*. | No. 26-cv-02456 (SRN-DLM) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

I.    THE STATE ACTION ................................................................................ 3

      A.    Minnesota's Complaint ................................................................. 3

      B.    Fossil Fuel Defendants' Unsuccessful Removal to Federal Court ............... 3

      C.    State-Court Proceedings on Remand ........................................... 4

II.   THE UNITED STATES' NONINTERFERENCE IN SIMILAR LAWSUITS ......................... 5

III.  THE UNITED STATES' RECENT EFFORTS TO RESTRAIN STATES' SUITS AGAINST
      PRIVATE FOSSIL FUEL DEFENDANTS ................................................... 6

      A.    *United States v. Hawaii* and *United States v. Michigan* .............................. 6

      B.    This Suit ...................................................................................... 7

LEGAL STANDARDS ....................................................................................... 8

ARGUMENT ...................................................................................................... 9

I.    THE UNITED STATES DOES NOT ALLEGE AN INJURY-IN-FACT TRACEABLE TO
      MINNESOTA'S CONDUCT. ....................................................................... 9

      A.    The United States Is Not Injured By a Hypothetical Final Judgment in the
            State Action or By the Action's Mere Pendency. ........................ 10

            1.    No Actual or Imminent Injury Caused by a Hypothetical Final
                  Judgment ...................................................................... 10

            2.    No Injury From Mere Pendency of the State Action ................ 13

      B.    This Case Is Unripe. ................................................................. 15

II.   THE UNITED STATES' PROFFERED INJURY ALLEGATIONS ARE FACTUALLY
      UNSUPPORTED. ........................................................................................ 15

      A.    Interference with Federal Regulation ......................................... 16

      B.    Foreign Affairs Injury ............................................................... 19

C.     Financial Burdens on Energy Companies and Increased Costs ................... 20

D.     *Parens Patriae* Standing ......................................................................... 22

E.     Federal Leasing and "Energy Dominance" Policy .................................... 233

F.     Prompting Other States to Sue ................................................................. 23

G.     Iowa's Disapproval .................................................................................. 24

H.     *Per Se* Standing If Minnesota's State-Law Claims Are Preempted ........... 24

III.    THE UNITED STATES LACKS A CAUSE OF ACTION. ............................................... 27

A.     No Statutory or Common-Law Cause of Action ....................................... 27

B.     No Equitable Cause of Action .................................................................. 27

1.     Presumption Against Interference in State Court Litigation ............ 28

2.     Adequate Remedy at Law ............................................................... 29

CONCLUSION ........................................................................................................... 31

**TABLE OF AUTHORITIES**

**Cases**

*Alabama v. California,*
   145 S. Ct. 757 (2025)..................................................................................................... 6

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
   458 U.S. 592 (1982) .................................................................................................... 22

*Allstate Ins. Co. v. Hague,*
   449 U.S. 302 (1981) .................................................................................................... 24

*Alvarez v. Smith,*
   558 U.S. 87 (2009) ...................................................................................................... 25

*Arizona v. United States,*
   567 U.S. 387 (2012) .................................................................................................... 26

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015) .................................................................................................... 27

*Bates v. Dow Agrosciences LLC,*
   544 U.S. 431 (2005) ............................................................................................... 13, 21

*Beacon Theatres, Inc. v. Westover,*
   359 U.S. 500 (1959) .................................................................................................... 29

*Cipollone v. Liggett Grp., Inc.,*
   505 U.S. 504 (1992) .................................................................................................... 25

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................................................passim

*Clinton v. Goldsmith,*
   526 U.S. 529 (1999) .................................................................................................... 27

*Denver & R.G.R. Co. v. United States,*
   241 F. 614 (8th Cir. 1917) .......................................................................................... 27

*Dep't of Commerce v. New York,*
   588 U.S. 752 (2019) ...................................................................................................... 9

*Diamond Alternative Energy, LLC v. EPA,*
   606 U.S. 100 (2025) .................................................................................................... 13

*Diggs v. Wolcott,*
   8 U.S. (4 Cranch) 179 (1807) ...................................................................................... 28

*Director v. Newport News Shipbuilding & Dry Dock Co.,*
(*Newport News*), 514 U.S. 122 (1995) ...................................................... 16, 17

*Donovan v. City of Dallas,*
377 U.S. 408 (1964) ...................................................................................... 2, 28

*Elkharwily v. Mayo Holding Co.,*
955 F. Supp. 2d 988 (D. Minn. 2013) ........................................................ 8, 10

*Entergy Arkansas, Inc. v. Pub. Serv. Comm'n,*
2012 WL 1415593 (E.D. Ark. 2012)................................................................ 18

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367 (2024) .............................................................................. 9, 11, 17

*Fenner v. Boykin,*
271 U.S. 240 (1926) ........................................................................................ 30

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.,*
527 U.S. 308 (1999) .................................................................................. 28, 30

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.,*
816 F.3d 1241 (9th Cir. 2016) ........................................................................ 18

*Harrison v. Jefferson Parish Sch. Bd.,*
78 F.4th 765 (5th Cir. 2023)..................................................................... 16, 19

*Hekel v. Hunter Warfield, Inc.,*
118 F.4th 938 (8th Cir. 2024)......................................................................... 14

*Hollingsworth v. Perry,*
570 U.S. 693 (2013) ........................................................................................ 14

*Illig v. Union Elec. Co.,*
652 F.3d 971 (8th Cir. 2011) ............................................................................ 8

*Illinois v. City of Chicago,*
137 F.3d 474 (7th Cir. 1998) .......................................................................... 12

*In re Debs,*
158 U.S. 564 (1895) ........................................................................................ 29

*In re SuperValu, Inc.,*
870 F.3d 763 (8th Cir. 2017) .................................................................... 12, 23

*La Union del Pueblo Entero v. Abbott,*
604 F. Supp. 3d 512 (W.D. Tex. 2022) .......................................................... 26

*Leiter Minerals, Inc. v. United States,*
352 U.S. 220 (1957) ........................................................................................ 31

*McKesson v. Doe*,
  592 U.S. 1 (2020) .................................................................................................26

*McNaught v. Nolen*,
  76 F.4th 764 (8th Cir. 2023) ................................................................................ 14

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014) ...............................................................................29

*Minn. Bankers Ass'n v. FDIC*,
  152 F.4th 893 (8th Cir. 2025)...............................................................................15

*Minnesota v. API* (*Minnesota I*),
  2021 WL 1215656 (D. Minn. 2021)..............................................................3, 4, 11

*Minnesota v. API* (*Minnesota III*),
  2025 WL 562630 (Minn. Dist. Ct. 2025) ........................................................ 4, 26

*Minnesota v. API* (*Minnesota,
  II*), 63 F.4th 703 (8th Cir. 2023) ........................................................................ 4

*Minnesota v. API*,
  2026 WL 192130 (Minn. Ct. App. 2026).............................................................. 5

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) ...............................................................................21

*Missouri v. Biden*,
  52 F.4th 362 (8th Cir. 2022) .....................................................................9, 12, 22

*Moore v. Sims*,
  442 U.S. 415 (1979) .............................................................................................28

*N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,
  163 F.3d 449 (7th Cir. 1998) ................................................................................ 8

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ....................................................................................... 18, 25

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) .............................................................................................21

*Neb. Pub. Power Dist. v. MidAmerican Energy Co.*,
  234 F.3d 1032 (8th Cir. 2000) .............................................................................15

*New England Power Generators Ass'n, Inc. v. FERC*,
  707 F.3d 364 (D.C. Cir. 2013)............................................................................. 18

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
  523 U.S. 726 (1998) .............................................................................................12

*Osborn v. United States*,
918 F.2d 724 (8th Cir. 1990) ........................................................................ 8

*Oxygenated Fuels Ass'n Inc. v. Davis*,
331 F.3d 665 (9th Cir. 2003) ...................................................................... 18

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ...................................................................................... 24

*Pennsylvania v. West Virginia*,
262 U.S. 553 (1923) .................................................................................... 22

*Pickrell v. Sorin Grp. USA, Inc.*,
293 F. Supp. 3d 865 (S.D. Iowa 2018) ....................................................... 27

*Pub. Citizen v. FMCSA*,
374 F.3d 1209 (D.C. Cir. 2004) .................................................................. 18

*Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*,
946 F.3d 951 (6th Cir. 2020) ...................................................................... 16

*Sanitary Dist. of Chi. v. United States*,
266 U.S. 405 (1925) .................................................................................... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................... 8, 9, 14, 23

*Sun Oil Co. v. Wortman*,
486 U.S. 717 (1988) .................................................................................... 24

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .................................................................................... 15

*Texas v. United States*,
523 U.S. 296 (1998) .................................................................................... 26

*Trainor v. Hernandez*,
431 U.S. 434 (1977) ............................................................................... 28, 30

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................................................. 9, 25

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .................................................................................... 28

*Trump v. New York*,
592 U.S. 125 (2020) .................................................................................... 12

*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) .................................................................. 26

*United States v. California,*
   655 F.2d 914 (9th Cir. 1980) ................................................................. 27

*United States v. City of Jackson,*
   318 F.2d 1 (5th Cir. 1963) ...................................................................... 25

*United States v. Hawaii,*
   --- F. Supp. 3d ----, 2026 WL 1021227 (D. Haw. 2026) ....................... passim

*United States v. Idaho,*
   623 F. Supp. 3d 1096 (D. Idaho 2022) ....................................................... 16

*United States v. Michigan,*
   817 F. Supp. 3d 630 (W.D. Mich. 2026) .......................................... 7, 11, 17, 22

*United States v. Missouri,*
   114 F.4th 980 (8th Cir. 2024) ............................................................. 16, 25

*United States v. Rural Elec. Convenience Coop. Co.,*
   922 F.2d 429 (7th Cir. 1991) .................................................................. 29

*United States v. Texas,*
   173 F.4th 659 (5th Cir. 2026) ................................................................. 17

*United States v. Texas,*
   566 F. Supp. 3d 605 (W.D. Tex. 2021) ........................................................ 16

*United States v. Texas,*
   599 U.S. 670 (2023) ............................................................................. 25

*United States v. West Virginia,*
   295 U.S. 463 (1935) ........................................................................... 8, 25

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
   529 U.S. 765 (2000) ............................................................................. 26

*Warshak v. United States,*
   532 F. 3d 521 (6th. Cir. 2008) ................................................................. 15

*West Virginia v. EPA,*
   597 U.S. 697 (2022) ............................................................................. 18

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ........................................................................... 9, 12

*Whitney v. Guys, Inc.,*
   700 F.3d 1118 (8th Cir. 2012) ................................................................ 8, 13

*Whole Woman's Health v. Jackson,*
   595 U.S. 30 (2021) ........................................................................... 27, 28

**Other Authorities**

Br. for the U.S. as Amicus Curiae, *Alabama v. California*,
2024 WL 7044535 (U.S. 2024) .................................................................................. passim

Br. for the U.S. as Amicus Curiae, *Sunoco LP v. City & Cnty. of Honolulu*,
2024 WL 5095299 (U.S. 2024) ........................................................................................ 5

John Harrison, *Ex Parte* Young, 60 Stan. L. Rev. 989 (2008) ............................................ 29

**INTRODUCTION**

For nearly six years, Minnesota has been prosecuting an action in state court ("State Action") against three sets of private fossil fuel entities doing business in Minnesota ("Fossil Fuel Defendants"[1]). Minnesota alleges that the Fossil Fuel Defendants have deceptively marketed fossil fuel products for decades and that their deceptive conduct continues. This State Action follows a tradition of state attorneys general suing private defendants in industries like tobacco and opioids for deceptive commercial practices.

The United States lacks any direct interest in the State Action, yet it brings this extraordinary suit to prevent Minnesota from proceeding. This suit violates the established norm that federal courts do not interfere with or restrain state court proceedings, which is rooted in fundamental concerns of federalism. The United States abandons this longstanding federalism principle to pursue its policy objectives. This historically unprecedented tactic has already failed twice in recent months: the United States similarly sued Hawaiʻi and Michigan to restrain them from commencing litigation against private fossil fuel defendants in their own state courts. Both cases were dismissed for lack of Article III jurisdiction. The only difference here is that the United States is suing Minnesota many years after the State Action commenced, which is even more egregious.

---

[1] ExxonMobil (Exxon Mobil Corporation and ExxonMobil Oil Corporation), Koch Industries (Koch Industries and subsidiaries Flint Hills Resources and Flint Hills Resources Pine Bend), and the American Petroleum Institute.

The United States lacks an injury-in-fact traceable to the State Action, which names only the Fossil Fuel Defendants. The United States' alleged injuries depend on its intentional mischaracterization of Minnesota's suit as one seeking to regulate global fossil fuel production or greenhouse gas emissions, a fallacy that this District (per Judge Tunheim), the Eighth Circuit, and Minnesota state courts have rejected. Even if the United States' mischaracterization were accepted, its injury allegations rest on speculation about what final judgment might someday be entered in the State Action; how the Fossil Fuel Defendants might respond; and what indirect effects those hypothetical responses might have on the United States. This chain of contingencies cannot establish an injury-in-fact. Nor does the United States show that the State Action's mere pendency currently causes it any real injury.

The United States also lacks a cause of action because its requested relief is not grounded in statute or common law, and it violates traditional equity principles. Among other defects, this suit violates the "general rule" that "state and federal courts would not interfere with or try to restrain each other's proceedings." *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964).

Allowing this suit to proceed would license the United States to drag into federal court any state-court suit that a sitting presidential administration dislikes, by merely alleging that the suit is precluded by federal law and asserting some remote federal interest. Like its sister courts, this Court should reject this attempt to aggrandize the Executive Branch and expand federal jurisdiction.

2

## FACTUAL BACKGROUND

### I.    THE STATE ACTION

#### A.    Minnesota's Complaint

In June 2020, Minnesota—through Attorney General Ellison—sued ExxonMobil, Koch Industries, and the American Petroleum Institute ("API," a trade association) in Minnesota state court. Minnesota asserts exclusively state-law claims, which seek relief for deceiving consumers about the climate-related dangers of fossil fuel products. State Compl. ¶¶ 8–9. Minnesota alleges the Fossil Fuel Defendants learned in the 1950s or earlier that the ordinary use of their products releases greenhouse gas pollution that causes catastrophic harm. *Id.* ¶¶ 55–82. Instead of providing warnings, they carried out a decades-long disinformation campaign to expand the market for these products. *Id.* ¶¶ 83–138. As Defendants foresaw, Minnesota is experiencing ever-worsening injuries caused by this deception. *Id.* ¶¶ 139–83.

#### B.    Fossil Fuel Defendants' Unsuccessful Removal to Federal Court

The Fossil Fuel Defendants removed the State Action to federal court. Judge Tunheim ordered remand, the Eighth Circuit affirmed, and the Supreme Court declined to review. *Minnesota v. API* (*Minnesota I*), 2021 WL 1215656 (D. Minn. 2021), *aff'd*, 63 F.4th 703 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 620 (2024).

In his ruling, Judge Tunheim rejected the Fossil Fuel Defendants' "caricature" of the State Action as "seeking a referendum on the broad landscape of fossil fuel extraction, production, and emission." *Id.* at *13. "[T]he State's action here is far more modest." *Id.* It simply addresses "whether Defendants engaged in a misinformation campaign that ran

afoul of Minnesota's consumer protection statutes and common law," "caus[ing] harm to Minnesota." *Id.* at *7. "[T]he State alleges no causes of action related to pollution regulations or disputes between states over emissions standards …." *Id.* at *4.

An Eighth Circuit panel unanimously agreed, explaining that the State Action is limited to "trying to hold fossil fuel producers responsible for alleged misrepresentations." *Minnesota v. API* (*Minnesota II*), 63 F.4th 703, 708 (8th Cir. 2023). "[N]one of Minnesota's claims try to hold the Energy Companies liable for production activities— only marketing." *Id.* at 715.

Judge Stras's solo concurrence urged "Congress or the Supreme Court" to reconsider the "well-pleaded complaint rule" and allow the Fossil Fuel Defendants to remove based solely on an anticipated "federal-preemption defense." *Id.* at 717–20 (Stras, J., concurring). Disagreeing with the panel's conclusion that Minnesota's suit focuses on deception, Judge Stras asserted his unfounded assessment that the State Action seeks to "[r]egulat[e] the production and sale of fossil fuels worldwide." *Id.* at 717–19.

C.     **State-Court Proceedings on Remand**

Back in Minnesota state court in early 2024, the Fossil Fuel Defendants filed motions to dismiss, which the state district court (Aligada, J.) mostly denied. The court— like Judge Tunheim and the Eighth Circuit—understood the State Action as exclusively targeting deception, without "seek[ing] to restrict emissions or limit the sale of fossil fuels." *Minnesota v. API* (*Minnesota III*), 2025 WL 562630, at *11 (Minn. Dist. Ct. 2025). Then, the court entered a stay pending the Fossil Fuel Defendants' interlocutory appeals. The Minnesota Court of Appeals affirmed, describing the State Action as targeting "a deceptive

4

campaign to mislead," and the Minnesota Supreme Court denied review. *Minnesota v. API* (*Minnesota IV*), 2026 WL 192130, at *1 (Minn. Ct. App. 2026) (nonprecedential), *rev. denied*, 2026 WL 1040497 (Minn. 2026). The district court lifted the stay on May 4, 2026.

## II.   THE UNITED STATES' NONINTERFERENCE IN SIMILAR LAWSUITS

Minnesota's State Action is one of many brought by state and local governments since 2017 to seek relief relating to climate change from private fossil fuel defendants. U.S. Compl. ¶¶ 45–46. Most claims are deception-based: like Minnesota's, they seek to hold private defendants liable for deceiving and failing to warn about product dangers. The United States has never sought to intervene in these suits. And between 2017 and 2025— under three presidential administrations—the United States did not seek to enjoin these suits.

In fact, the United States previously maintained that deception-based claims are not preempted by federal common law or the Clean Air Act ("CAA"). In a 2024 amicus brief arguing against preemption under those theories, the United States explained that deception-based claims rest on "the violation of ... a [state-law] duty to disclose and not be deceptive," rather than a state-law "duty not to pollute" that might conceivably impinge upon federal law. Br. for the U.S. as Amicus Curiae, *Sunoco LP v. City & Cnty. of Honolulu*, 2024 WL 5095299, at *16–17 (U.S. 2024) (quotations omitted).

The United States also advocated against third parties' attempts to collaterally attack these state-court suits in federal court. In *Alabama v. California*, several states moved the U.S. Supreme Court to exercise its original jurisdiction to enjoin Minnesota and other states from maintaining lawsuits against private fossil fuel defendants in their state courts.

*Alabama v. California*, No. 158, Original (U.S., filed May 22, 2024). The United States submitted an amicus brief arguing against standing, because "no precedent [supports] standing in a case [where] the plaintiff's asserted injury is premised on the defendant's attempts to impose liability on other parties in other suits." Br. for the U.S. as Amicus Curiae, *Alabama v. California*, 2024 WL 7044535, at *3–4 (U.S. 2024) [hereinafter *Alabama* Amicus]. The United States articulated that "[t]he only interests directly at stake" were those of "private energy companies" and that the plaintiff states were really acting for the fossil fuel industry's "benefit." *Id.* at *11–12 (quotations omitted). Moreover, it asserted that Minnesota and other defendant states could not have violated the plaintiff states' sovereignty by taking "mere litigating positions" against private defendants. *Id.* at *8. It explained that a state's act of filling a lawsuit did not "bind the state courts," in part because they had "yet to adjudicate the claims …, let alone impose any liability." *Id.* Thus, there was "no possibility that the plaintiff States have 'already' been injured." *Id.* The United States even opined that state courts were "superior[] forums" to resolve "any challenges to the validity of the suits." *Id.* at *14–18. Consistent with the United States' position, the Supreme Court declined jurisdiction. *Alabama v. California*, 145 S. Ct. 757 (2025).

### III.   THE UNITED STATES' RECENT EFFORTS TO RESTRAIN STATES' SUITS AGAINST PRIVATE FOSSIL FUEL DEFENDANTS

#### A.   *United States v. Hawaii* and *United States v. Michigan*

Changing course, on April 30, 2025, the United States filed nearly identical complaints against Hawaiʻi and Michigan in federal district court, seeking to bar them from

filing lawsuits against private fossil fuel defendants in state court. *United States v. Michigan*, 817 F. Supp. 3d 630 (W.D. Mich. 2026); *United States v. Hawaii*, --- F. Supp. 3d ----, 2026 WL 1021227 (D. Haw. 2026).

The courts held they lacked Article III jurisdiction because the United States did not allege an injury-in-fact traceable to the states' conduct. The United States' injury theory amounted to an untenable assertion that it "would have standing to prevent any state court lawsuit against a private entity so long as the United States alleges that the litigation might interfere with the goals of the Executive Branch." *Hawaii*, 2026 WL 1021227, at *10. Such a theory was "even more tortuous and speculative than the one criticized by the United States Solicitor General in *Alabama v. California*." *Michigan*, 817 F. Supp. 3d at 648. Additionally, the *Hawaii* court held the United States' request for injunctive relief exceeded the limits of federal equity jurisdiction. 2026 WL 1021227, at *9.

The United States has not appealed either judgment, and its deadline to appeal *Michigan* has passed.

### B.      This Suit

Shortly after losing *Hawaii* and *Michigan*, the United States commenced this suit. The United States mischaracterizes the State Action as concerned with regulating greenhouse gas emissions and fossil fuel production, then argues that federal law precludes Minnesota's claims, including through several preemption theories the state district court has rejected. Unlike in *Hawaii* and *Michigan*, the United States also moves for a preliminary injunction.

7

## LEGAL STANDARDS

Minnesota brings a facial jurisdictional attack under Rule 12(b)(1), which generally requires the Court to "restrict[] itself to the face" of the United States' Complaint and apply a plausibility pleading standard. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). That said, the Court should consider Minnesota's complaint because it is attached to the United States' Complaint. *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011). When Minnesota's complaint "contradicts allegations in the [United States'] complaint," it "trumps the allegations." *See Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 996 (D. Minn. 2013) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)). "[M]ere conclusory statements" carry no weight, and courts "draw[] on [their] own judicial experience and common sense" to assess plausibility. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quotations and original brackets omitted).

The United States, like any other plaintiff, must establish constitutional standing[2] by showing it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury-in-fact must be "[i] an invasion of a legally protected interest that is [ii] concrete and particularized and [iii] actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotations omitted). The United States "must clearly allege facts demonstrating each element." *Id.* at 338 (cleaned

---

[2] *E.g.*, *United States v. West Virginia*, 295 U.S. 463, 470–71 (1935).

up). "[S]tanding is not dispensed in gross," and must be shown "for each claim" and "each form of relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). This Court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).

A concrete injury is "real," is "not abstract," and "actually exist[s]." *Spokeo*, 578 U.S. at 340 (quotations omitted). An actual or imminent injury "ha[s] already occurred or [is] likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Soon means "*certainly impending*," not just "*possible*." *Missouri v. Biden*, 52 F.4th 362, 368 (8th Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Traceability requires "a predictable chain of events leading from the [defendant's] action to the asserted injury." *All. for Hippocratic Med.*, 602 U.S. at 385. A theory of injury that is "too attenuated" is insufficient, *id.* at 383, like one depending on a "speculative chain of possibilities," *Clapper*, 568 U.S. at 414. Causal chains that involve "speculation about the decisions of third parties" are especially disfavored. *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019). And it is far "more difficult" to show that government action directed at "*someone else*" injures the plaintiff. *All. for Hippocratic Med.*, 602 U.S. at 382.

## ARGUMENT

**I.    THE UNITED STATES DOES NOT ALLEGE AN INJURY-IN-FACT TRACEABLE TO MINNESOTA'S CONDUCT.**

Primarily, the United States recycles a standing theory rejected in *Hawaii* and *Michigan*, asserting it would be indirectly injured by a hypothetical *final judgment* that might someday be entered in the State Action against the Fossil Fuel Defendants. The

United States also suggests that it is presently harmed by Minnesota's suit regardless of the ultimate outcome. Neither theory shows injury-in-fact. Further, this case is unripe.

### A. The United States Is Not Injured By a Hypothetical Final Judgment in the State Action or By the Action's Mere Pendency.

The United States' theory of injury from the State Action mischaracterizes Minnesota's claims and depends on an attenuated and speculative chain of possibilities that cannot support standing. Construed properly, Minnesota's case does not threaten the United States, either by its final judgment or its present effect.

### 1. No Actual or Imminent Injury Caused by a Hypothetical Final Judgment

The United States misportrays the State Action as seeking relief that would regulate fossil fuel production or greenhouse gas emissions. Instead, Minnesota's complaint—which "trumps" any contrary allegations in the United States' complaint, *see Elkharwily*, 955 F. Supp. 2d at 996—repeatedly asserts that the Fossil Fuel Defendants are being held liable only for their deception and failures to warn, State Compl. ¶¶ 2–9. This Court need not break new ground to reach this conclusion; it need only look to the conclusions of Judge Tunheim in this Court, the Eighth Circuit panel, and Judge Aligada in the state district court, each of which repeatedly rejected the assertion that Minnesota was doing anything other than seeking to hold the Fossil Fuel Defendants liable for their illegal, deceptive business practices. Of course, a judgment against the Fossil Fuel Defendants may require them to pay damages for their illegal deceptive conduct. But that does not mean that the State Action seeks to regulate emissions. This fundamental misapprehension of the State Action undermines, and undoes, each allegation of harm asserted by the United States.

10

Even if the Court accepted the United States' "caricature" of Minnesota's suit, *Minnesota I*, 2021 WL 1215656, at *13 (Tunheim, J.), its alleged injuries rest on too speculative a chain of possibilities. Before the United States could be affected by the State Action's outcome, the case must: (i) begin and proceed through years of discovery; (ii) withstand summary judgment; (iii) prevail at trial; (iv) yield relief that—even though Minnesota's claims are purely deception-based—somehow regulate fossil fuel production or emissions; and (v) prevail in appeals. In addition, (vi) the Fossil Fuel Defendants' response to any final judgment must be so drastic that it indirectly affects the United States.

This chain of possibilities, which involves "multiple layers of unpredictable future events," *Hawaii*, 2026 WL 1021227, at *7, is "too attenuated," *All. for Hippocratic Med.*, 602 U.S. at 390. It is "tortuous and speculative" to predict that a hypothetical judgment against two fossil fuel producers and a trade association will "effect a result so significant that it impacts" things like "federal energy policy, federal leasing revenues, the domestic cost of energy, and the federal government's [foreign] relations." *Michigan*, 817 F. Supp. 3d at 648–49.

That is precisely why the United States disputed the plaintiff states' standing to challenge Minnesota's suit in *Alabama v. California*. *Cf. Michigan*, 817 F. Supp. 3d at 648–49 (relying on the *Alabama* Amicus). Today, "[t]he most that can be said is that [the] state court 'might' find the private companies liable." *Alabama* Amicus, 2024 WL 7044535, at *7. "But even then, those directly affected would be the private companies …. And the effect of any final judgment would be contingent on [the U.S. Supreme Court] allowing the judgment to stand …." *Id.*

11

Some links in the chain are especially weak. First, the Court may not speculate "in advance that [Minnesota's] judicial system will lead to any particular result." *Clapper*, 568 U.S. at 413–14 (quoting *Whitmore*, 495 U.S. at 159–60). The United States' attempt to challenge a yet-unknown litigation outcome resembles impermissible challenges to administrative actions that have not yet finalized, general policy statements that have not yet been implemented, or "laws not yet enacted." *Illinois v. City of Chicago*, 137 F.3d 474, 477 (7th Cir. 1998) ("laws not yet enacted"); *Biden*, 52 F.4th at 368 (courts cannot "assume" a regulator will "inevitably take an action "at some point in the future"); *Trump v. New York*, 592 U.S. 125, 131 (2020) ("general statement of policy" that was not yet implemented).[3]

Second, the United States' alleged injuries require impermissible guesses about "the independent action[s] of some third part[ies] not before the court," including but not limited to the Fossil Fuel Defendants' reaction to the State Action's final outcome. *See In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (cleaned up). The Supreme Court has admonished against "speculation as to whether a jury verdict will prompt [a] manufacturer to take any particular action (a question, in any event, that will depend on a variety of

---

[3] *Accord Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (environmental plaintiff could not challenge forest management plan that did not authorize any logging).

12

cost/benefit calculations best left to the manufacturer's accountants)." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005).[4]

It makes no difference that in *Hawaii* and *Michigan*, the United States sued before those states filed their cases against private defendants. As the *Hawaii* court explained, even if the United States had waited, its purported injury would have "remain[ed] speculative, attenuated, and based on conjecture." 2026 WL 1021227, at *11. So too here.

### 2.      No Injury From Mere Pendency of the State Action

Perhaps aware that it cannot challenge a hypothetical final judgment, the United States also alleges that the *mere pendency* of Minnesota's suit against the Fossil Fuel Defendants is "currently" harming the United States. U.S. Compl. ¶¶ 2, 43–44. That strains credulity.

The burdens of defending the State Action fall solely on the Fossil Fuel Defendants, not the United States. *See Whitney*, 700 F.3d at 1128 (courts should apply "judicial experience and common sense"); *Alabama* Amicus, 2024 WL 7044535, at *11 ("The only interests directly at stake are the interests of private energy companies."). "[L]itigation between the State [] and private fossil fuel entities [does] not require the United States to do anything or to refrain from doing anything." *Hawaii*, 2026 WL 1021227, at *8. The

---

[4] *Compare Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 108–20 (2025) (where California adopted an emissions regulation knowing it "would cause 'substantial reductions in demand for gasoline'" and did not "meaningfully dispute" that fuel producers suffered an injury-in-fact traceable to the regulation, the producers—a "target" of the regulation—showed their injuries were redressable by invalidating the regulation).

United States does not allege whether, how, or why the ordinary burdens of defending Minnesota's suit are disrupting the operations of Fossil Fuel Defendants—well-resourced entities that routinely deal with litigation—much less inflicting on the United States a "concrete" injury that "actually exist[s]." *See Spokeo*, 578 U.S. at 340 (quotations omitted).

The Court should not be swayed by the United States' vague allegations of intangible harm, like supposed disruptions to federal supremacy or potential "chao[s]" stemming from uncertainty. *E.g.*, U.S. Compl. ¶¶ 2–3, 9–10, 14, 68, 78–79, 98. In the absence of a final judgment, none remotely qualify as cognizable injuries.[5] The mere "presence of a disagreement," no matter how strongly the United States feels, "is insufficient by itself to meet Art. III's requirements." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (quotations omitted). Moreover, the United States must not only allege "that" it was harmed, but also provide a plausible account of "how" its cognizable interests are concretely harmed, which the Complaint fails to do. *McNaught v. Nolen*, 76 F.4th 764, 772 (8th Cir. 2023) (intangible reputational harm); *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 943 (8th Cir. 2024) (tangible monetary injury).

---

[5] The United States essentially admits as much in conceding—when explaining why it is suing *now*—that the State Action was not infringing on federal interests "while the case was stayed" pending appeal. U.S. Compl. ¶ 40. While shifting the locus back to trial court might burden Fossil Fuel Defendants with new obligations (like discovery), it has no bearing on "uncertainty," federal supremacy, or any other purported harm caused by the State Action's pendency.

### B. This Case Is Unripe.

For similar reasons, the United States' suit is constitutionally and prudentially unripe. Constitutional ripeness essentially "boil[s] down to the same question" as injury-in-fact here: the United States' asserted harm is not imminent enough to warrant judicial intervention. *Cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 & n.5 (2014). This suit also is not prudentially ripe given "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Cf. Minn. Bankers Ass'n v. FDIC*, 152 F.4th 893, 897 (8th Cir. 2025) (quotations omitted). This case is unfit because the United States' claims depend on whether Minnesota's suit will ultimately regulate the Fossil Fuel Defendants' production and emissions, indirectly impacting the United States. "[C]ourts shy from settling [such] disputes contingent in part on future possibilities," where "further factual development" is needed. *See Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). "Answering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation." *Warshak v. United States,* 532 F.3d 521, 526 (6th. Cir. 2008). Nor would the United States suffer hardship if this Court waits for the State Action to further develop, as Minnesota will explain in opposition to the preliminary injunction motion.

## II. THE UNITED STATES' PROFFERED INJURY ALLEGATIONS ARE FACTUALLY UNSUPPORTED.

An examination of each alleged injury confirms the United States has not established an injury-in-fact traceable to Minnesota's conduct.

### A.   Interference with Federal Regulation

The United States contends the State Action interferes with its regulatory authority under the CAA. U.S. Compl. ¶¶ 84–89. This theory rests on the premise that Minnesota's suit seeks to regulate greenhouse gas emissions. As discussed, that is false. *See supra* § IV.A.1.a. So, the United States' allegations of regulatory interference are facially implausible.

The Complaint also fails on its own terms because it lacks facts showing *how* Minnesota's suit against the Fossil Fuel Defendants would disrupt (or is currently disrupting) regulatory functions. To establish an injury-in-fact to a government function, a plaintiff must show "some tangible interference with its authority to regulate or to enforce its laws." *Harrison v. Jefferson Parish Sch. Bd.*, 78 F.4th 765, 770 (5th Cir. 2023) (quoting *Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 957 (6th Cir. 2020)). A federal-government plaintiff must "explain … how" the challenged conduct "affects [its] ability" to perform specific statutory functions. *Director v. Newport News Shipbuilding & Dry Dock Co.* (*Newport News*), 514 U.S. 122, 133–34 (1995) (quotations omitted). Here, the United States does not identify how it will suffer any real and articulable harm—like a reduction in law enforcement resources, a specific property or informational injury, or a deprivation of a bargain—of the type courts have found sufficient to create federal-government standing.[6]

---

[6] *E.g.*, *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405, 424–27 (1925) (massive water diversions, which lowered the Great Lakes' water levels, obstructed navigation and

The Complaint, for example, does not identify any regulatory action the United States has been unable to conduct, or that has been delayed or altered. *Cf. Hawaii*, 2026 WL 1021227, at *6 (The "United States does not identify … any EPA regulation that would be undermined if the State … prevails." (quotations omitted)). Nor does it identify any instance where the State Action impaired the enforcement of a CAA requirement; prevented EPA from considering any factor required by the statute; or subjected anyone to a requirement inconsistent with a CAA requirement.

Absent such a concrete interference, it is insufficient for the United States to complain abstractly about "actions that frustrate the purposes" of statutes it administers or an inchoate desire for a "uniform manner" of regulation. *Newport News*, 514 U.S. at 132–34; *cf. United States v. Texas*, 173 F.4th 659, 667 (5th Cir. 2026) (en banc) ("eroding the public trust" was not a cognizable injury to local government). A plaintiff's "strong opposition" to the defendant's conduct, no matter its "intensity," does not show standing,

---

interfered with Canada's treaty rights); *United States v. Missouri*, 114 F.4th 980, 984–85 (8th Cir. 2024) (Missouri firearm statute "impeded the federal government's ability to enforce federal law by causing state officials to withdraw from joint task forces with federal law enforcement [and] by disrupting information sharing between state and federal officers"); *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022) ("Idaho's law deprive[d] [the United States] of the benefits of [the] bargain in …. provid[ing] Medicare funding to hospitals within Idaho"); *United States v. Texas*, 566 F. Supp. 3d 605, 634–35 (W.D. Tex. 2021) (Texas abortion law impaired "federal personnel and contractors from carrying out their obligations to provide abortion-related services").

17

*All. For Hippocratic Med.*, 602 U.S. at 394, because "a general legal, moral, ideological, or policy objection" is not an injury-in-fact, *Michigan*, 817 F. Supp. 3d at 646–47.[7]

Again, any final judgment in the State Action that could have a significant financial effect on the Fossil Fuel Defendants is years away, and the United States "cannot manufacture standing … based on hypothetical future harm." *Clapper*, 568 U.S. at 402. And even if the State Action did add market uncertainty, which it does not, addressing market uncertainty is a core aspect of the "job" of "[r]egulators"—who "by nature work under conditions of serious uncertainty"—not a cognizable injury. *See Pub. Citizen v. FMCSA*, 374 F.3d 1209, 1221 (D.C. Cir. 2004).[8] Across many contexts, courts have rejected arguments that "uncertainty [is] sufficient to constitute an injury-in-fact." *Entergy*

---

[7] The Szabo Declaration supporting the United States' preliminary injunction motion changes nothing. It is irrelevant to Minnesota's facial jurisdictional attack, which requires the Court to restrict itself to the Complaint and Minnesota's attached complaint. Even if it were considered, Szabo's core theory is that the State Action threatens so much uncertainty that it impairs the United States' CAA regulatory functions. Szabo identifies no instance of actual interference, and any hypothetical harm that could even result under Minnesota's mischaracterized complaint is years away. Szabo's testimony is also conclusory and implausible.

[8] Notably, when Congress passed the CAA, it did not identify "a smoothly functioning market [as] a 'goal' of the [statute]" or direct EPA to reduce energy market uncertainty. *Oxygenated Fuels Ass'n Inc. v. Davis*, 331 F.3d 665, 673 (9th Cir. 2003). The CAA concerns air pollution, and it does not charge EPA with any overarching responsibility to "balanc[e] the many vital considerations of national policy implicated in deciding how Americans will get their energy." *West Virginia v. EPA*, 597 U.S. 697, 724–32 (2022).

18

*Arkansas, Inc. v. Pub. Serv. Comm'n*, 2012 WL 1415593, at *6 (E.D. Ark. 2012) (quotations omitted).[9]

### B.      Foreign Affairs Injury

The United States alleges that Minnesota's suit—which involves only domestic defendants—somehow hinders its "ability to speak with one voice in foreign affairs," and "obstruct[s]" its "relations with foreign countries." U.S. Compl. ¶¶ 15, 44, 47, 68, 98. These conclusory allegations do not demonstrate injury-in-fact. *See Harrison*, 78 F.4th at 770 (government must identify "tangible interference with its authority").

Although the Complaint provides a laundry list of climate-related international agreements, U.S. Compl. ¶¶ 55–60, it fails to identify any actual conflict between Minnesota's suit and any obligations or policies stated in these instruments. Nor does the United States show any impairment with its ability to withdraw from these instruments; in fact, the United States acknowledges it *is* doing so without obstacle. *Id.* ¶ 60.

Likewise, the United States does not show that Minnesota's suit is inhibiting, or could inhibit, any of its traditional foreign affairs functions like recognition, treaty-making,

---

[9] *See New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 369 (D.C. Cir. 2013) (electrical utilities are not injured because of "broad-based market effects stemming from regulatory uncertainty," and "[i]t would be a strange thing indeed if uncertainty were a sufficiently certain harm to constitute an injury in fact."); *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241, 1250 (9th Cir. 2016) (Lawyers do not "suffer a legally cognizable injury in fact when they … protect their clients' rights or alter their litigation strategy amid legal uncertainty," because that "is the *role* of lawyers[.]"); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 811–12 (2003) ("mere uncertainty as to the validity of a legal rule" does not make a suit ripe).

or consular services. Although it vaguely alleges that the State Action might cause friction in "relations with foreign nations," the United States does not identify any foreign sovereign that has raised any grievance. *Cf. Hawaii*, 2026 WL 1021227, at *6 (The "United States does not identify … any foreign nation that would alter its relations …." (quotations omitted)).[10] Indeed, it is hard to conceive how the State Action (which as discussed above, does not seek to regulate emissions) could plausibly injure the United States' foreign affairs functions, when states for decades have adopted a vast array of measures—including binding emissions regulations more stringent than federal requirements—to mitigate climate harms.[11]

### C.    Financial Burdens on Energy Companies and Increased Costs

The United States alleges that the State Action is imposing a "financial burden on … energy businesses" and "national energy producers,"[12] "raising … costs" for oil and gas nationwide and "increas[ing] the United States' costs for purchasing fuels." U.S. Compl.

---

[10] The Landau Declaration supporting the preliminary injunction motion is irrelevant for the same reasons as the Szabo Declaration. *See supra* § IV.B.1. In any event, Landau's testimony only confirms there is no injury-in-fact. He speculates that foreign nations "may seek to respond to the lawsuit through their relations with the United States." Dkt. 12 ¶ 21. If this assertion was plausible, Landau would be able to point to *actual* responses by foreign actors given that Minnesota's suit has been pending for six years. Landau also hypothesizes that Minnesota's suit could impact foreign fuel producers. *Id.* This Court does not need to hypothesize about this irrelevant assertion. None of the named Fossil Fuel Defendants are foreign entities, so Landau's assertion is counterfactual.

[11] *Cf.* Ctr. for Climate & Energy Sols., *State Climate Policy Maps*, https://www.c2es.org/content/state-climate-policy (identifying cap-and-trade programs, renewable requirements for electrical utilities, and vehicle emissions regulations).

[12] Strangely, the United States refers only to unspecified "energy businesses" and "national energy producers," without mentioning any of the Fossil Fuel Defendants.

20

¶¶ 16, 69. To the extent the United States is referring to burdens from a hypothetical final judgment in the State Action, that is insufficient, as discussed. *Supra* § IV.A.1.a.

This argument in any form is absurd in its implications. The United States cannot seriously contend that it can sue to block any state action that might raise the costs of energy, as states act in all manner of ways that impose costs on energy businesses. Minnesota, for example, imposes a property tax on the Line 3 oil pipeline, which connects Alberta and Wisconsin. This property tax increases the *costs* of fuel production, though not necessarily the price of fuels. Minnesota is not required to allow the pipeline to operate tax-free. But under the United States' theory, anything Minnesota does that might raise fuel costs gives the United States standing to sue with no further showing of harm. This limitless theory of standing would give the United States standing to sue on any issue that might have any impact on any price of any good.

Moreover, ExxonMobil and Koch Industries are just two oil and gas producers, and the United States has not plausibly explained how they would be *capable* of altering prices in response to an adverse judgment. *Cf. Hawaii*, 2026 WL 1021227, at *8 ("vague theories that the State Court lawsuit may ultimately hurt consumers" were "too abstract and conjectural"). Oil and gas are commodities whose prices are set by supply and demand in competitive global markets, not any specific producer's liabilities or expenses. Courts have rejected such standing theories based on speculative market impacts. *E.g.*, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 653 (9th Cir. 2017) (traceability not satisfied by allegations that California's cage-free egg laws would harm out-of-state producers by increasing production costs or depressing out-of-state prices); *cf. Nat'l Pork Producers Council v.*

21

*Ross*, 598 U.S. 356, 386–87 (2023) ("[s]ubstantial harm to interstate commerce" from California pork welfare law was "nothing more than a speculative possibility"); *Bates*, 544 U.S. at 445. Nor could energy prices increase if API—a trade association—is subject to an adverse judgment. As in *Michigan*, there is no factual basis to speculate that the State Action might "impact[] … the domestic cost of energy." 817 F. Supp. 3d at 640, 648–49.

### D.    *Parens Patriae* Standing

Relatedly, the United States contends it has *parens patriae* standing to protect Americans from the economic or constitutional injury of increased energy costs. U.S. Compl. ¶ 16. But—as discussed—the United States does not show any imminent price increase traceable to the State Action. Nor could higher energy costs amount to a *constitutional* injury to Americans. Additionally, the United States does not satisfy one of the key prerequisites for *parens patriae* standing, which requires showing a "sufficiently concrete" "quasi-sovereign interest" "apart from the interests of particular private parties." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600–08 (1982). No precedent recognizes a quasi-sovereign interest in avoiding a speculative risk of marginal energy price increases. If that were the case, the United States could interject itself into any state-law dispute involving energy market participants. *Compare Pennsylvania v. West Virginia*, 262 U.S. 553, 581–85, 591 (1923) (Pennsylvania and Ohio had *parens patriae* standing to challenge West Virginia law that—if followed—would have "largely curtail[ed] or cut off [their] supply of natural gas," causing "incalculable injury").

22

### E.   Federal Leasing and "Energy Dominance" Policy

Nor can the United States establish any "certainly impending" harm, *Biden*, 52 F.4th at 368 (quoting *Clapper*, 568 U.S. at 409), by alleging that Minnesota's suit "threaten[s] revenue from federal leasing" programs and "threaten[s]" the President's "energy dominance" policy, U.S. Compl. ¶¶ 9, 47–48, 69. The United States does not identify any instance where Minnesota's suit has affected any business's leasing decisions, or "any lessee that would avoid entering any oil or gas lease ... if the State ... prevails" years from now. *See Hawaii*, 2026 WL 1021227, at *6. Worse, this standing theory depends on improper speculation about "the independent action[s]" of energy businesses that are "not before the court." *Cf. In re SuperValu, Inc.*, 870 F.3d at 768 (quotations omitted).

Similarly, the United States' allegations about the President's "energy dominance" policy are too abstract and speculative. U.S. Compl. ¶¶ 47–50. Principally, the United States alleges that Minnesota's suit is inconsistent with certain executive orders. *Id.* ¶¶ 48–49. But no precedent suggests the President can elevate a policy preference into an injury-in-fact by merely declaring it so. *Cf. Spokeo*, 578 U.S. at 340 (looking to "the judgment of Congress" for "whether an intangible harm constitutes injury in fact").

### F.   Prompting Other States to Sue

The United States cannot establish an injury-in-fact by speculating that Minnesota's now-six-year-old suit might prompt other, unspecified states to bring hypothetical lawsuits. U.S. Compl. ¶ 79. This theory relies on undue "guesswork as to how" other states "will exercise their judgment," *Clapper*, 568 U.S. at 413, and speculation about how the United States might then be harmed.

23

### G.    Iowa's Disapproval

The United States cannot show that *it* has standing because of an Iowa statute that purportedly conflicts with Minnesota's suit. U.S. Compl. ¶¶ 5, 80. As the United States argued in *Alabama v. California*, where Iowa was a plaintiff, Iowa's disagreement does not even mean that *it* is injured. *Alabama* Amicus, 2024 WL 7044535, at *6–9. And even if Iowa were injured, Iowa would be the proper plaintiff, not the United States. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 n.12 (1984) (United States cannot freely assert the rights of third parties). At most, Iowa's law means that Iowa lacks a remedy for the conduct at issue in this lawsuit. It says nothing about injuries suffered by Minnesota in Minnesota under Minnesota law.

Further, the United States ignores that tension between different states' laws is a normal feature of our federalist system with an established solution: the Minnesota state courts overseeing the State Action will apply choice-of-law rules to resolve any purported conflicts. *Cf. Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308–12 (1981). Federal courts have long refused to interfere by "constitutionalizing" or federalizing these choice-of-law analyses. *Sun Oil Co. v. Wortman*, 486 U.S. 717, 727–28 (1988). Given the limited federal role, the United States has no authority to "superintend" this choice-of-law question, much less an injury-in-fact. *Cf.* U.S. Compl. ¶ 80.

### H.    *Per Se* Standing If Minnesota's State-Law Claims Are Preempted

The United States implies that if Minnesota's state-law claims against the Fossil Fuel Defendants are federally preempted, the United States must have suffered a *per se* injury-in-fact because the supremacy of federal law is undermined. This argument

24

conflates federal preemption with Article III standing. *See Hawaii*, 2026 WL 1021227, at *6 (rejecting United States' "legal conclusion that [its] 'sovereignty' will be injured if the State of Hawaii sues third parties in state court"). The Supremacy Clause tells courts which law prevails when federal and state law collide. It does not water down Article III's "bedrock" case-or-controversy requirement that "[the Supreme Court] has applied to all manner of important disputes." *See United States v. Texas*, 599 U.S. 670, 675 (2023).

To show an injury-in-fact, the United States may not—for example—rely on "[g]eneral allegations that [a] state challenges the claim of the United States" or "asserts a right superior to that of the United States." *West Virginia*, 295 U.S. at 469–75 (dismissing United States' suit for lack of jurisdiction despite its asserted supremacy interest in navigable waters). Rather, courts require concrete and articulable harm to sovereign functions, which is completely absent here. *See supra* n.6 & accompanying text. Courts have not exempted the United States from the rule that "an injury in law is not an injury in fact," *TransUnion*, 594 U.S. at 427, or the prohibition on "dispute[s] solely about the meaning of a law, abstracted from any concrete actual or threatened harm," *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).

The United States' claim of injury is especially flimsy because it does not challenge an operative state law or regulation. *Cf. United States v. City of Jackson*, 318 F.2d 1, 9 (5th Cir. 1963) (United States may have standing to challenge state "law or pattern of conduct," but not "some sporadic act against a particular individual"). A state law or regulation can have immediate, binding, and predictable consequences, and its real-world effects might sometimes concretely injure the United States. *E.g.*, *Missouri*, 114 F.4th at 984–85. But

25

Minnesota's mere assertion of state-law claims in state-court litigation does not bind the Fossil Fuel Defendants, let alone the United States. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992) (it is the ultimate "award of damages" through which a state suit has capacity to "govern[] conduct and control[] policy"); *see Nat'l Park Hosp. Ass'n*, 538 U.S. at 809 (in ripeness context, asking whether agency action "command[ed] anyone to do anything," or "subject[ed] anyone to any…liability"). So, the United States' grievance regarding a "threat to federalism" is a mere "abstraction" that is "inadequate to support suit." *Texas v. United States*, 523 U.S. 296, 302 (1998).

Cases recognizing that a "violation of [federal] laws [alone] ... suffices to support a *criminal* lawsuit by the Government,"[13] where Congress empowered the United States to seek redress for deprivations of voting rights,[14] or where standing was unaddressed,[15] do not help the United States here. No precedent supports the United States' theory that the Supremacy Clause gives it freewheeling authority to transform any federal preemption defense in ongoing state litigation that does not involve the United States, into a federal injury to the United States.

---

[13] *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis added).

[14] *E.g.*, *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512 (W.D. Tex. 2022).

[15] *Arizona v. United States*, 567 U.S. 387 (2012); *United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012).

### III.   THE UNITED STATES LACKS A CAUSE OF ACTION.

This suit also cannot proceed because the United States lacks a cause of action. The Fossil Fuel Defendants can assert, and have asserted, their federal defenses to Minnesota's claims in the State Action. *Minnesota III*, 2025 WL 562630, at *11–16. And Minnesota state courts are fully "competent to apply federal ... law." *McKesson v. Doe*, 592 U.S. 1, 5 (2020). But here, the United States, which is not a party to the State Action, brings a separate lawsuit that effectively asserts the Fossil Fuel Defendants' federal defenses as freestanding affirmative claims.

### A.   No Statutory or Common-Law Cause of Action

To bring this case, the United States, "like any other plaintiff," needs "a cause of action against the state." *United States v. California*, 655 F.2d 914, 918 (9th Cir. 1980). This could be a "statut[ory]" or "a common-law right of action." *Denver & R.G.R. Co. v. United States*, 241 F. 614, 616 (8th Cir. 1917). Here, the United States identifies only the All Writs Act and the Declaratory Judgment Act. U.S. Compl. ¶ 12. Neither supplies a cause of action, nor does the common law.[16]

### B.   No Equitable Cause of Action

Lacking a statutory or common-law cause of action, the United States must show it has an equitable cause of action that falls inside the boundaries of federal equity

---

[16] *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) (All Writs Act merely authorizes a court to issue writs "in aid of" otherwise "existing statutory jurisdiction"); *Pickrell v. Sorin Grp. USA, Inc.*, 293 F. Supp. 3d 865, 869 (S.D. Iowa 2018) ("The Declaratory Judgment Act does not create a substantive cause of action ….").

jurisdiction. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state ... officers is the creation of courts of equity ....").[17] Equity jurisdiction is delimited by longstanding maxims of equity. *E.g.*, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44–45 (2021) (identifying such "traditional equitable principles"). Federal courts will award only "those sorts of equitable remedies traditionally accorded by courts of equity at our country's inception." *Trump v. CASA, Inc.*, 606 U.S. 831, 832 (2025) (quotations omitted). "[A]ny substantial expansion of past practice" is left to Congress alone. *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 329 (1999).

Here, the United States' lawsuit violates multiple limitations on equity.

### 1.      Presumption Against Interference in State Court Litigation

First, as the *Hawaii* court concluded, federal courts sitting in equity generally will not interfere with pending state-court litigation. *See* 2026 WL 1021227, at *9. "Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time." *Donovan*, 377 U.S. at 412. This "strong policy against federal intervention in state judicial processes," *Moore v. Sims*, 442 U.S. 415, 423

---

[17] *Accord* 1 John Norton Pomeroy, Jr., *A Treatise on Equitable Remedies* § 330 (1905) ("When the state as plaintiff invokes … equity, it is not exempt from the rules applicable to ordinary suitors ….").

(1979), is rooted in "basic concerns of federalism," *Trainor v. Hernandez*, 431 U.S. 434, 441 (1977).[18]

True, "traditional equity practice … allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 595 U.S. at 39. But this cause of action for an "anti-suit injunction" allows only "*potential defendants* in legal actions to raise in equity a defense available at law." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (emphasis added); *see* John Harrison, *Ex Parte* Young, 60 Stan. L. Rev. 989, 990 (2008) ("a party who would be the defendant in a corresponding lawsuit"). No precedent authorizes a plaintiff like the United States that is so far removed from an underlying state action to enjoin the action after it has commenced.

### 2.    Adequate Remedy at Law

"[E]quity has always acted only when legal remedies were inadequate[.]" *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959); *see In re Debs*, 158 U.S. 564, 583 (1895) (similar). The United States cannot avail itself of equitable remedies without first exhausting opportunities to intervene in the state-court action. *United States v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 432–33 & n.6 (7th Cir. 1991) (United States had to first attempt to intervene and be rebuffed).[19] The United States' failure to do so is

---

[18] *Accord Diggs v. Wolcott*, 8 U.S. (4 Cranch) 179, 180 (1807) ("[A] circuit court of the United States had not jurisdiction to enjoin proceedings in a *state* court.").

[19] Minnesota reserves all objections to any attempted intervention.

irreconcilable with its assertion in *Alabama v. California* that Minnesota's and other "state-court suits are not just adequate, but superior, forums for resolving [federal defenses] in the first instance." *Alabama* Amicus, 2024 WL 7044535, at *15.

Moreover, existing legal remedies are adequate because the Fossil Fuel Defendants will defend themselves in the State Action—in state court and any appeals up through the U.S. Supreme Court—using the same federal-law theories the United States espouses. *See Trainor*, 431 U.S. at 441 (focusing "on the remedies available in the pending state proceeding"). Nothing prevents the United States from helping the Fossil Fuel Defendants make such arguments, including by offering amicus briefs. Thus, there is no reason to conclude the State Action does not adequately protect the United States' purported interests. *See Fenner v. Boykin*, 271 U.S. 240, 243–44 (1926) (action brought by state officers should not be enjoined unless it "plainly appears" the defendant's ability to defend in state court would be inadequate). The United States' mere preference for a federal forum changes nothing. *Grupo Mexicano*, 527 U.S. at 321 (federal courts lack "a general power to grant relief even where legal remedies are not 'practical and efficient'").

## CONCLUSION

This case should be dismissed.[20]

Dated: May 29, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ Oliver J. Larson
OLIVER J. LARSON
Assistant Attorney General
Attorney Reg. No. 0392946

PETER N. SURDO
Special Assistant attorney General
Attorney Reg. No. 0339015

RYAN E. PESCH
Special Assistant attorney General
Attorney Reg. No. 0398743

CATHERINE A. RIOS-KEATING
Special Assistant Attorney General
Attorney Reg. No. 0402940

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1265 (Voice)
(651) 297-4139 (Fax)
oliver.larson@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS

---

[20] Precedent forecloses Minnesota's argument that the Anti-Injunction Act bars this suit. *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957). Minnesota reserves the right to challenge it on appeal.

31