# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>STATE OF MINNESOTA and<br>KEITH ELLISON, in his official capacity<br>as Minnesota Attorney General,<br><br>*Defendants*. | No. 26-cv-02456 (SRN-DLM) |

## CORRECTED REPLY IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMIS[1]

---

[1] This corrected version includes a table of authorities inadvertently omitted from a prior filed version (Dkt. 47).

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES.......................................................................................ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT.............................................................................................................. 2

I.     THE COURT SHOULD NOT ACCEPT ALLEGATIONS THAT MISCHARACTERIZE THE STATE ACTION AND MINNESOTA'S COMPLAINT. ............................................. 2

II.    THE UNITED STATES LACKS STANDING. ................................................. 4

       A.     The Mere Pendency of Minnesota's Suit Is Not Causing an Injury. ............ 4

       B.     As in *Hawaii* and *Michigan*, the United States Cannot Sue Based on Speculation About an Adverse Final Judgment. ............................................ 8

       C.     The United States' Declarations Change Nothing. ....................................... 9

       D.     The United States' Other Case Citations Are Irrelevant. ............................ 10

III.   THIS CASE IS UNRIPE. ....................................................................................... 12

IV.    NO HISTORICAL ANALOG JUSTIFIES EXERCISING FEDERAL EQUITY JURISDICTION. ....................................................................................................... 12

CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
  458 U.S. 592 (1982) ........................................................................................... 11

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................................. 5

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) ............................................................................... 2

*Cass Cnty. v. United States*,
  570 F.2d 737 (1978) ............................................................................................. 6

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................... 8, 9

*Diggs v. Wolcott*,
  8 U.S. (4 Cranch) 179 (1807) ............................................................................. 14

*Director v. Newport News Shipbuilding & Dry Dock Co.*,
  514 U.S. 122 (1995) ............................................................................................. 4

*Donovan v. City of Dallas*,
  377 U.S. 408 (1964) ........................................................................................... 14

*Entergy Ark., Inc. v. Pub. Serv. Comm'n*,
  2012 WL 1415593 (E.D. Ark. 2012) .................................................................... 5

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ........................................................................................... 15

*In re Debs*,
  158 U.S. 564 (1895) ...................................................................................... 11, 13

*In re RFC & ResCap Liquidating Tr. Litig.*,
  2015 WL 3756476 (D. Minn. 2015) ..................................................................... 2

*Keller v. City of Fremont*,
  719 F.3d 931 (8th Cir. 2013) ............................................................................... 7

*Kennedy v. Ferguson*,
  679 F.3d 998 (8th Cir. 2012) ............................................................................... 7

*Kurns v. Railroad Friction Products Corp.*,
  565 U.S. 625 (2012) ............................................................................................. 5

*La Unión del Pueblo Entero v. Abbott (LUPE)*,
  604 F. Supp. 3d 512 (W.D. Tex. 2022) .............................................................. 10

*Leiter Minerals, Inc. v. United States*,
  352 U.S. 220 (1957) ........................................................................................14

*Minnesota v. API* (*Minnesota III*),
  2025 WL 562630 (Minn. Dist. Ct. 2025) ..........................................................7

*Missouri v. Biden*,
  52 F.4th 362 (8th Cir. 2022)..............................................................................6

*Mitchum v. Foster*,
  407 U.S. 225 (1972) .........................................................................................13

*NLRB v. Nash-Finch Co.*,
  404 U.S. 138 (1971) .........................................................................................14

*Osborn v. United States*,
  918 F.2d 724 (8th Cir. 1990)..............................................................................9

*Pavek v. Simon*,
  467 F. Supp. 3d 718 (D. Minn. 2020) ................................................................9

*Saginaw Cnty. v. STAT Emergency Med. Servs. Inc.*,
  946 F.3d 951 (6th Cir. 2020)..............................................................................4

*Sanitary Dist. of Chicago v. United States*,
  266 U.S. 405 (1925) ....................................................................................11, 13

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ......................................................................................4, 10

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)..............................................................................2

*Texas v. United States*,
  523 U.S. 296 (1998) ...........................................................................................6

*Trainor v. Hernandez*,
  431 U.S. 434 (1977) .........................................................................................14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...........................................................................................1

*Trump v. Anderson*,
  601 U.S. 100 (2024) .........................................................................................13

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ....................................................................................12, 13

*United States v. Arizona*,
  641 F.3d 339 (9th Cir. 2011)..............................................................................5

*United States v. City of Jackson*,
  318 F.2d 1 (5th Cir. 1963)................................................................................11

iii

*United States v. Hawaii*,
  2026 WL 1021227 (D. Haw. 2026).................................................................................8

*United States v. Michigan*,
  635 F. Supp. 944 (W.D. Mich. 1985).............................................................................11

*United States v. Michigan*,
  817 F. Supp. 3d 630 (W.D. Mich. 2026).........................................................................8

*United States v. Michigan*,
  2025 WL 2227814 (W.D. Mich. 2025) ............................................................................8

*United States v. Missouri*,
  114 F.4th 980 (8th Cir. 2024)...............................................................................5, 6, 13

*United States v. Raines*,
  362 U.S. 17 (1960) ........................................................................................................10

*United States v. Rural Elec. Convenience Coop. Co.*,
  922 F.2d 429 (7th Cir. 1991).........................................................................................15

*United States v. Supreme Ct. of N.M.*,
  839 F.3d 888 (10th Cir. 2016).........................................................................................6

*United States v. Texas*,
  566 F. Supp. 3d 605 (W.D. Tex. 2021) ...........................................................................6

United States," *United States v. West Virginia*,
  295 U.S. 463 (1935) ...................................................................................................1, 6

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ......................................................................................................10

*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................................................................3

*Whitney v. Guys, Inc.*,
  700 F.3d 1118 (8th Cir. 2012).........................................................................................3

*Whole Woman's Health v. Jackson*,
  2021 WL 5016707 (U.S. 2021) .....................................................................................13

*Zink v. Lombardi*,
  783 F.3d 1089 (8th Cir. 2015).........................................................................................2

**Statutes**

28 U.S.C. § 2283 ..................................................................................................................13

**Other Authorities**

Brief for the United States, *Alabama v. California*,
  2024 WL 7044535 (U.S. 2024) ....................................................................... 6

*Standing and Criminal Law*,
  49 BYU L. Rev. 961 (2024) ........................................................................... 10

Brief for the United States, *Sunoco LP v. City & Cnty. of Honolulu*,
  2024 WL 5095299 (U.S. 2024) ....................................................................... 3

**INTRODUCTION**

The United States' opposition ("Opposition") does not fix its Complaint's failure to plead facts showing an injury-in-fact traceable to Minnesota's suit ("State Action") against API, ExxonMobil, and Koch ("Fossil Fuel Defendants").

Contrary to the United States' central mischaracterization, the State Action does not seek to regulate greenhouse gas emissions or fossil fuel production. Regardless of whether this mischaracterization is accepted, the United States does not allege that the Fossil Fuel Defendants have changed their activities because of the State Action's mere pendency, much less demonstrate a downstream injury to the United States. Instead, the United States repeatedly speculates about the final outcome of the State Action, a standing theory that was resoundingly rejected in *United States v. Hawaii* and *United States v. Michigan*.

The United States primarily retorts that it has an injury-in-fact because Minnesota's suit usurps federal authority. This argument confuses Article III standing with the merits of federal preemption. Absent a concrete and actual or imminent injury, this Court cannot exercise jurisdiction just because the United States asserts that Minnesota's suit is federally preempted. The United States cannot establish standing with "[g]eneral allegations that [a] state challenges [a] claim of the United States" or "asserts a right superior to that of the United States," *United States v. West Virginia*, 295 U.S. 463, 469–75 (1935), because "an injury in law is not an injury in fact," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

Nor does the United States identify the Founding-era historical analog that is required for federal equity jurisdiction. In fact, this suit violates traditional constraints on

such jurisdiction, including the general rule that federal courts will not enjoin state-court proceedings, and the prerequisite for a plaintiff in equity to show that legal remedies are inadequate.

## ARGUMENT

**I.     THE COURT SHOULD NOT ACCEPT ALLEGATIONS THAT MISCHARACTERIZE THE STATE ACTION AND MINNESOTA'S COMPLAINT.**

The United States' standing allegations must be facially plausible and rise above speculation. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). The United States does not seriously dispute that its allegations are implausible if they are contradicted by Minnesota's complaint, which is an exhibit to the United States' Complaint.[2]

The United States' standing arguments depend on the erroneous premise that Minnesota's suit regulates fossil fuel production or greenhouse gas emissions. The Court may reject this premise based on the actual contents of Minnesota's complaint, *supra* n.1, just as Judge Tunheim, the Eighth Circuit, and two Minnesota state courts did, Mot. at 3–5, 10–11. Minnesota brings only commercial deception claims: fraud and misrepresentation, failure to warn, deceptive trade practices, and false advertising. State Compl. ¶¶ 184–242. Borrowing the United States' own words, such claims seek relief for breaches of "dut[ies] to disclose and not be deceptive," not a "duty not to pollute." Br. for

---

[2] *In re RFC & ResCap Liquidating Tr. Litig.*, 2015 WL 3756476, at *3 (D. Minn. 2015) (Nelson, J.) (when an "exhibit" "contradict[s]" an allegation, the exhibit "trumps the allegations" on a motion to dismiss); *accord Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (similar); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (similar).

2

U.S., *Sunoco LP v. City & Cnty. of Honolulu*, 2024 WL 5095299, at \*16–17 (U.S. 2024) (quotations omitted). Neither Minnesota's claims nor its requested relief would regulate production or emissions in purpose or effect. That Minnesota's suit might result in a large judgment is irrelevant, as such costs would regulate deception, not the Fossil Fuel Defendants' production or emissions.

The United States argues that the Eighth Circuit's and Judge Tunheim's analyses were limited to the removability context and that the plausibility pleading standard requires a different outcome. Opp. at 21–22. But those courts reached their conclusions by simply reading Minnesota's complaint, and this Court should do the same. Plausibility pleading always requires applying "judicial experience and common sense" to disregard implausible allegations. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quotations omitted).

Rejecting the United States' mischaracterization would not prematurely adjudicate the merits because Minnesota's standing arguments do not "depend[] on the merits of the [United States'] contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Just as removal was rejected by correctly characterizing Minnesota's complaint without addressing the preemption arguments that the Fossil Fuel Defendants later raised in state court, this Court need only read Minnesota's complaint to reject standing, and it need not address the merits of federal preemption.

3

## II.   THE UNITED STATES LACKS STANDING.

Regardless of how Minnesota's complaint is characterized and whether the United States' preemption theories have merit, the United States fails to show an injury-in-fact traceable to Minnesota's suit.

### A.   The Mere Pendency of Minnesota's Suit Is Not Causing an Injury.

The United States argues that the mere pendency of Minnesota's suit "claims federal power" in a manner that "usurps the United States' exclusive authority to regulate interstate air emissions and conduct foreign affairs." Opp. at 2, 16–17. Beyond the United States' legal conclusions and rhetoric, it alleges no *facts* showing any concrete usurpation injury. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (a concrete injury is "real and not abstract" (quotations omitted)). Merely arguing that Minnesota's claims are federally preempted (merits questions) does not show that Minnesota's prosecution of those claims is causing a "tangible interference with [the United States'] authority to regulate or to enforce its laws" (standing questions). *See Saginaw Cnty. v. STAT Emergency Med. Servs. Inc.*, 946 F.3d 951, 957 (6th Cir. 2020).

The United States identifies no facts showing that Minnesota's suit has impaired any regulatory action, interfered with an obligation in a foreign affairs instrument, or inhibited traditional foreign affairs functions. Mot. at 16–31. It fails to "explain … how" the challenged conduct "affects [its] ability" to perform specific functions, as a federal-government plaintiff must. *Director v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 133–34 (1995). At most, the United States tries to allege that Minnesota's suit creates some uncertainty, but the United States does not rebut the abundant caselaw, *see*

4

Mot. at 18–19 & nn.8–9, confirming that uncertainty is not "sufficient to constitute an injury-in-fact," *Entergy Ark., Inc. v. Pub. Serv. Comm'n*, 2012 WL 1415593, at *6 (E.D. Ark. 2012).

And even if the Court were to accept the mischaracterization that Minnesota's suit is *trying* to regulate production or emissions, the United States does not show any *actual or imminent* regulatory interference. *Kurns v. Railroad Friction Products Corp.* explained that "state regulation can be effectively exerted through an award of damages," and it is the ultimate "obligation to pay compensation" that may be a "method of governing conduct." 565 U.S. 625, 637 (2012) (cleaned up). Thus, any regulatory effect that could interfere with federal prerogatives requires a final outcome in the State Action imposing liability.

These shortcomings distinguish this case from ones where the United States could show concrete—and actual or imminent—interferences with government functions. In *Arizona v. United States*, 567 U.S. 387 (2012), which never addressed standing, the United States challenged an Arizona statute that imposed "mandatory obligations on state and local officers" that "interfere[d]" with the Attorney General's statutory power to "delineate which [federal immigration enforcement] functions" those officers were "permitted to perform," *United States v. Arizona*, 641 F.3d 339, 348, 351–52 (9th Cir. 2011). Similarly, in *United States v. Missouri*, 114 F.4th 980 (8th Cir. 2024), the Eighth Circuit searched for "an invasion of a legally protected interest" of the United States "that is concrete and particularized and actual or imminent." *Id.* at 984 (quotations omitted). The court found the required injury because a Missouri law tangibly disrupted joint federal-state law

5

enforcement task forces and information-sharing efforts. *See id.* at 984–85; *see also* Mot. at 16–17 & n.6 (discussing, inter alia, *United States v. Texas*, 566 F. Supp. 3d 605 (W.D. Tex. 2021)); *see United States v. Supreme Ct. of N.M.*, 839 F.3d 888, 893–99 (10th Cir. 2016) (United States could challenge state regulation limiting federal prosecutors from issuing subpoenas).

The United States cannot show an injury-in-fact by asserting that Minnesota has "claimed" authority that it lacks. Competing claims of authority between governments, absent a concrete interference with governmental functions, does not establish standing. *Cass Cnty. v. United States*, 570 F.2d 737, 739–41 (1978) (distinguishing actionable controversy with hypothetical or abstract allegations); *West Virginia*, 295 U.S. at 469–75 (rejecting United States' "[g]eneral allegations that [a] state challenges [a] claim of the United States" or "asserts a right superior to that of the United States"); *Missouri v. Biden*, 52 F.4th 362, 369 (8th Cir. 2022) ("alleged sovereign injuries" had to be "concrete"); *Texas v. United States*, 523 U.S. 296, 302 (1998) (a "threat to federalism" is a mere "abstraction" "inadequate to support suit" (quotations omitted)). The United States recognized as much in *Alabama v. California*, where it explained that Minnesota had not injured other states' "sovereignty" by taking "mere litigating positions" that did "not bind the state courts" or anyone else. Br. for U.S., *Alabama v. California*, 2024 WL 7044535, at *8 (U.S. 2024) (quotations omitted).

Nor can the United States analogize this suit to cases exercising jurisdiction over pre-enforcement challenges to state laws or regulations. Opp. at 33–35 & n.6. A pre-enforcement plaintiff may sue only "where the impact of the regulation is direct and

6

immediate and they allege an actual, well-founded fear that the law will be enforced against them." *Keller v. City of Fremont*, 719 F.3d 931, 947 (8th Cir. 2013) (quotations omitted). But the United States is not a target of enforcement. And the United States concededly "does not challenge an operative state law or regulation," Opp. at 18–19, that has direct and immediate impacts. Instead, the United States protests a civil action brought against others that is years away from an operative, binding judgment.

Tellingly, the United States concedes it was not injured while the State Action was stayed in the state district court pending interlocutory state-court appeals. Opp. at 12. Minnesota was vigorously prosecuting its case on appeal during the stay,[3] so lifting the stay caused only one real-world difference: the Fossil Fuel Defendants became subject to litigation burdens in a different forum, the state district court. The United States fails to explain how this change of forum caused it injury. Nor could it, because ordinary litigation burdens "are not injuries for purposes of … Article III" even for the Fossil Fuel Defendants, much less an unrelated third party like the United States. *Kennedy v. Ferguson*, 679 F.3d 998, 1002–03 (8th Cir. 2012).

---

[3] The United States is wrong that the appeals could have yielded "an order resulting in dismissal of Minnesota's lawsuit" in its entirety. Opp. at 12. Koch was allowed to appeal only the denial of its anti-SLAPP motion to dismiss. Special Term Order at 2–3, *Minnesota v. API*, No. A25-0419 (Minn. App. Apr. 22, 2025). This denial rested on a determination that Minnesota's "anti-SLAPP statute [did] not apply." *Minnesota v. API* (*Minnesota III*), 2025 WL 562630, at *35 (Minn. Dist. Ct. 2025). An appellate reversal would have required the district court to rule on the merits of Koch's motion, not to dismiss Minnesota's claims against Koch.

**B.      As in *Hawaii* and *Michigan*, the United States Cannot Sue Based on Speculation About an Adverse Final Judgment.**

Although the United States insists its purported injury does not depend on the State Action's outcome, its Opposition repeatedly invokes the hypothetical downstream effects of potential liabilities.

As the courts held in *United States v. Hawaii*, 2026 WL 1021227 (D. Haw. 2026), and *United States v. Michigan*, 817 F. Supp. 3d 630 (W.D. Mich. 2026), the United States cannot establish standing with such speculation. Precedent forecloses standing theories that assume "[a] judicial system will lead to any particular result in [a] case." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413–14 (2013) (quotations omitted); *see Michigan*, 817 F. Supp. 3d at 649 n.16 (similar).

The United States tries to distinguish *Hawaii* and *Michigan* because it sued those states before they commenced suit. Opp. at 35. However, whether those states would sue was only one of "multiple layers of unpredictable future events" that made the United States' previous lawsuits too speculative. *Hawaii*, 2026 WL 1021227, at *7. As the *Hawaii* court explained, it would have made no difference if the United States had waited until after Hawaiʻi sued. *Id.* at *11.[4]

Trying to avoid these authorities, the United States theorizes that the threat of future monetary liability affects the Fossil Fuel Defendants' present-day behavior so drastically

---

[4] The United States falsely contends "Michigan never challenged the United States' standing." Opp. at 7. Michigan argued there was no "concrete injury under Article III." Br. ISO MTD, *United States v. Michigan*, 2025 WL 2227814 (W.D. Mich. 2025).

that the United States is injured. Opp. at 5–6, 28–29, 32. However, the United States does not allege that any Fossil Fuel Defendant has altered its behavior whatsoever. There is therefore no basis to speculate that prices in competitive global energy markets with many participants are changing because API, ExxonMobil, and Koch are threatened with liability. Further, the United States' theory violates *Clapper*'s holding that "incur[ring] certain costs as a reasonable reaction to a risk of harm" does not establish injury-in-fact unless the harm is "certainly impending." 568 U.S. at 416. The United States does not show that liability is certainly impending for the Fossil Fuel Defendants, allege that they have reasonably reacted by incurring costs, or show that any such reaction is indirectly causing a downstream injury to the federal government or anyone else.

### C.    The United States' Declarations Change Nothing.

The United States tries to bolster its deficient Complaint with its preliminary injunction declarations. Opp. at 23. However, as the United States acknowledges, *id.* at 13, Minnesota's facial jurisdictional attack requires the Court to "restrict[] itself to the face" of the Complaint and attached materials, *see Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In any event, even if considered, the United States' conclusory declarations do not cure its deficient Complaint. Opp to PI Mot. at 12–17.[5]

---

[5] *Pavek v. Simon*, 467 F. Supp. 3d 718, 735 (D. Minn. 2020) (Nelson, J.), which did not involve a facial challenge, is irrelevant.

9

### D.      The United States' Other Case Citations Are Irrelevant.

The United States' legal citations cannot make up for the absence of *facts* establishing standing.

The United States' arguments about standing to bring criminal prosecutions are meritless. Mot. at 38–39 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). "Federal courts have not applied [Article III standing] requirements to criminal prosecutions …." Hessick & Benecky, *Standing and Criminal Law*, 49 BYU L. Rev. 961, 966 & n.29 (2024).

Nor can the United States rely on cases like *La Unión del Pueblo Entero v. Abbott* (*LUPE*), 604 F. Supp. 3d 512 (W.D. Tex. 2022), where the United States sought relief for widespread violations of individual constitutional rights. Here, the United States does not allege such violations. Moreover, in such cases, the United States employed causes of action under statutes like the Voting Rights Act, which congressionally recognize a sovereign interest in redressing constitutional injuries suffered by individuals. *E.g.*, *LUPE*, 604 F. Supp. 3d at 523–24 (citing *United States v. Raines*, 362 U.S. 17, 27 (1960) (emphasizing the "power of Congress to authorize the United States to bring this action [under the Civil Rights Act] in support of private constitutional rights")). Here, the United States does not invoke any statute where Congress invested it with a sovereign interest. *Cf. Spokeo*, 578 U.S. at 340 ("the judgment of Congress" informs whether an intangible harm injures a plaintiff).

10

Similarly, *parens patriae* standing cases like *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600–08 (1982), are irrelevant because the United States does not make out the requirements for such standing. Mot. at 22.[6]

In cases involving a restraint on interstate commerce, courts have expected the United States to show concrete interferences with proprietary, contractual, or congressionally recognized sovereign interests like: an "undeviating policy of segregation" that violated a statutory discrimination prohibition for common carriers, *United States v. City of Jackson*, 318 F.2d 1, 5–6 (5th Cir. 1963); massive water withdrawals that threatened the Great Lakes' navigability, *Sanitary Dist. of Chicago v. United States*, 266 U.S. 405, 423 (1925); the 1894 Pullman Strike that upended nationwide rail traffic and interfered with the performance of postal mail contracts, *In re Debs*, 158 U.S. 564, 566–67 (1895) (syllabus); or state taxes levied on federal instrumentalities, *United States v. Michigan*, 635 F. Supp. 944, 946 (W.D. Mich. 1985).

Finally, the United States claims sweeping "standing to prevent a conflict among the States." Mot. at 3. But the United States cannot identify a single precedent recognizing such standing because none exists. *Id.* at 30–31.[7]

---

[6] The United States' references to *Snapp*'s dicta that states have "sovereign interests" in "creat[ing] and enforc[ing] a legal code" and diplomatic "recognition" are irrelevant. 458 U.S. at 601–02. *Snapp* nowhere exempted sovereigns from Article III's standing requirements. *Id.* (stressing that "vague" standing theories do not "survive … Art. III").

[7] As Minnesota explained, Opp. to PI Mot. at 7–8 n.6, cases addressing whether a district court's decision threatens irreparable harm supporting an interlocutory appeal, Opp. at 33, also are irrelevant.

**III.    THIS CASE IS UNRIPE.**

This United States' suit is constitutionally unripe for the same reasons it lacks an injury-in-fact.

This suit is also prudentially unripe. Although the United States focuses on a potential money judgment against the Fossil Fuel Defendants, it lacks any plausible argument—much less standing—to challenge the other remedies Minnesota seeks, like an injunction barring future deceptive advertising. At this early juncture, the United States cannot possibly describe a narrowly tailored injunction that is "no more burdensome … than necessary," *see Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (quotations omitted), and that ensures Minnesota can proceed with the aspects of its case that indisputably fall outside the United States' standing and merits theories. The impracticability of fashioning an appropriately scoped injunction is just one of many practical problems making this suit unfit for resolution. This Court should not prematurely entangle itself in the minutiae of the State Action, where basic questions about the scope of Minnesota's claims and relief have not been addressed.

**IV.    NO HISTORICAL ANALOG JUSTIFIES EXERCISING FEDERAL EQUITY JURISDICTION.**

A federal court may grant "only those sorts of equitable remedies traditionally accorded by courts of equity at our country's inception." *CASA*, 606 U.S. at 841 (quotations omitted). Suits that violate this limitation fall outside "[t]he equity jurisdiction conferred on the Federal courts" altogether. *Id.* (quotations omitted). This limitation restricts the 1789

Judiciary Act's grant of federal jurisdiction over "all suits … in equity." *Id.* (quotations omitted).

The United States does not satisfy its burden to identify a "comparable predecessor" or a "historical pedigree" justifying this Court's exercise of equity jurisdiction. *Id* at 847. In suing to enjoin a state from prosecuting state-law claims against several private actors, the United States is not seeking to restrain the enforcement of allegedly unconstitutional or preempted provisions of state law. *E.g.*, *Missouri*, 114 F.4th at 986.[8] Nor has the United States suffered a proprietary or contractual injury. *Debs*, 158 U.S. 564 (proprietary and contractual interests in mail); *Sanitary Dist.*, 266 U.S. 405 (obstruction of navigable waters of the United States). And the United States does not argue that this suit falls within the *Ex parte Young* tradition, where potential defendants to a state enforcement action may sometimes seek a federal anti-suit injunction. Opp. at 40–41. "Such a lack of historical precedent is generally a telling indication of a severe constitutional problem …" *Cf. Trump v. Anderson*, 601 U.S. 100, 113 (2024) (cleaned up).

Cases addressing the scope of the Anti-Injunction Act, 28 U.S.C. § 2283, a statute that usually prohibits federal injunctions that restrain state-court proceedings, also are irrelevant. Opp. at 40–41. These cases held only that the United States falls within a judge-made exception to the Act. *Mitchum v. Foster*, 407 U.S. 225, 235–36 & n.20 (1972) (citing

---

[8] Similarly, the amicus brief in *Whole Woman's Health v. Jackson* addressed an injunction restraining the enforcement of a state statute designed to deprive many individuals of constitutional rights in a manner evading judicial review. 2021 WL 5016707, at *6 (U.S. 2021).

13

*Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957) (enjoining someone from claiming title to federal mineral rights); *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 139–41 (1971) (enjoining state-court order that interfered with NLRB decision)). Whether the United States falls within this statutory exception does not inform whether this suit properly invokes federal equity jurisdiction in the first place.

The United States' inability to identify any Founding-era analog for this suit should end the inquiry. If more were required, many cases demonstrate this suit is inconsistent with longstanding constraints on federal equity jurisdiction. For example, the United States cannot evade the "general rule" "that state and federal courts would not interfere with or try to restrain each other's proceedings," *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964), by conflating this rule with *Younger* abstention and then arguing that *Younger* is inapplicable, Opp. at 41–42. *Younger* abstention is just a modern outgrowth of the general rule,[9] which was established over a century before *Younger* and its forbear cases. *Donovan*, 377 U.S. at 412 (general rule was established "[e]arly in the history of our country"); *Diggs v. Wolcott*, 8 U.S. (4 Cranch) 179, 180 (1807) ("[A] circuit court of the United States had not jurisdiction to enjoin proceedings in a *state* court."). This rule forecloses federal equity jurisdiction independently of whether *Younger* abstention—a newer, derivative doctrine— also requires dismissal.

---

[9] *Trainor v. Hernandez*, 431 U.S. 434, 440 (1977) (this "basic doctrine of equity jurisprudence" is a "justification" for *Younger* (quotations omitted)).

14

15

Likewise, the United States cannot show it lacks an adequate remedy at law, Opp. at 42, because it did not exhaust opportunities to participate in Minnesota's suit before bringing this suit, *United States v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 432–33 & n.6 (7th Cir. 1991). The United States obviously believes it can present its views in the State Action: just last week, it submitted a brief there in support of the Fossil Fuel Defendants. As the Seventh Circuit held in *Rural Electric*, the United States' potential (and actual) participation in state court bars its attempt to invoke equity here. The United States' only response is to cite the concurrence in that case, which makes a policy argument about exempting the United States from this restriction on equity. That cannot be correct because "any substantial expansion" of equity jurisdiction is for Congress, not judges. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 329 (1999).

## CONCLUSION

The Motion should be granted.


DATED: June 29, 2026

**KEITH ELLISON**

**MINNESOTA ATTORNEY GENERAL**

*s/ Oliver J. Larson*
Oliver Larson,
MN Atty. Reg. No. 0392946
Div. Mgr., Environment and Natural Resources
Peter N. Surdo,
MN Atty. Reg. No. 0339015
Special Assistant Attorney General

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101
(651) 757-1010
liz.kramer@ag.state.mn.us

*Attorneys for Defendants State of Minnesota and Minnesota Attorney General Keith Ellison*

16