**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 26-cv-02456-SRN-DLM |
| STATE OF MINNESOTA and | ) | |
| KEITH ELLISON, in his official capacity | ) | |
| as Minnesota Attorney General | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**THE UNITED STATES' REPLY IN SUPPORT OF**
**MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

    I.    The United States is Likely to Succeed on the Merits............................ 1

        A. Uniquely Federal Interests ................................................................ 2

        B. Unconstitutional Extraterritorial Regulation .................................... 3

        C. Clean Air Act ..................................................................................... 5

        D. Foreign Affairs Doctrine .................................................................... 6

        E. Dormant Commerce Clause ............................................................... 8

    II.   The United States Suffers Irreparable Harm Absent an Injunction...... 9

    III. The Equities and Public Interest Favor the United States................... 14

CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Am. Elec. Power Co. v. Connecticut*
(AEP), 564 U.S. 410 (2011) ................................................................... 4, 6

*Am. Ins. Ass'n v. Garamendi,*
539 U.S. 396 (2003) ................................................................ 6, 7, 10, 11

*Arizona v. United States,*
567 U.S. 387 (2012) ................................................................. 1, 11

*Ass'n for Accessible Meds. v. Ellison,*
140 F.4th 957 (8th Cir. 2025) ........................................................ 9

*City of New York v. B.P., P.L.C.,*
2018 WL 8064051 (S.D.N.Y. Mar. 16, 2018) ............................................. 2

*City of New York v. Chevron Corp.,*
993 F.3d 81 (2d Cir. 2021) ........................................................ 1, 2, 3, 5, 8

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000) ................................................................ 7

*Heckler v. Chaney,*
470 U.S. 821 (1985) ................................................................ 9

*Hencely v. Fluor Corp.,*
146 S. Ct. 1086 (2026) ............................................................ 2, 3

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010) ................................................................. 7, 14

*Hyde v. United States,*
225 U.S. 347 (1912) ................................................................ 4

*Int'l Paper Co. v. Ouellette,*
479 U.S. 481 (1987) ................................................................ 5

*Jama v. Immigr. & Customs Enf't,*
543 U.S. 335 (2005)................................................................7

*Jesski v. Dakota, Minn. & E. R.R. Corp.,*
43 F.4th 861 (8th Cir. 2022) ........................................................ 2

*Medellin v. Texas,*
  552 U.S. 491 (2008) ................................................................ 7

*Minnesota by Ellison v. Am. Pet. Instit.,*
  63 F.4th 703 (8th Cir. 2023) ............................................... 1, 8

*Nat'l Pork Producers Council v. Ross,*
  598 U.S. 356 (2023) ........................................................... 2, 3

*NRDC v. EPA,*
  749 F.3d 1055 (D.C. Cir. 2014) ............................................ 13

*Regan v. Wald,*
  468 U.S. 222 (1984) ............................................................. 7

*Saleh v. Titan Corp.,*
  580 F.3d 1 (D.C. Cir. 2009) ............................................... 6, 7

*Simpson v. State,*
  17 S.E. 984 (Ga. 1893) ......................................................... 4

*Sinclair Wyo. Refin. Co. LLC v. EPA,*
  114 F.4th 693 (D.C. Cir. 2024) ............................................ 13

*Sleep No. Corp. v. Young,*
  532 F. Supp. 3d 793 (D. Minn. 2021) .................................... 9

*Strassheim v. Daily,*
  221 U.S. 280 (1911) ............................................................. 4

*Trump v. Vance,*
  941 F.3d 631 (2d Cir. 2019) ................................................ 14

*United States v. City of Jackson, Miss.,*
  318 F.2d 1 (5th Cir. 1963) ................................................... 10

*United States v. Hamed,*
  976 F.3d 825 (8th Cir. 2020) ................................................ 9

*United States v. Missouri,*
  114 F.4th 980 (8th Cir. 2024) ............................................... 1

*Wachovia Bank, N.A. v. Burke,*
  414 F.3d 305 (2d Cir. 2005) ................................................. 5

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.,*
  778 F. Supp. 3d 440 (D.R.I. 2025), *appealed filed* No. 25-1428
  (1st Cir. 2025) ...................................................................................... 12

## Statutes

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...................................................................... 12

42 U.S.C. § 7410(k) ......................................................................................... 12

42 U.S.C. § 7411(a)(1) ..................................................................................... 12

42 U.S.C. § 7412(d)(2) ..................................................................................... 12

42 U.S.C. § 7412(d)(6) ..................................................................................... 12

42 U.S.C. § 7415 ............................................................................................... 12

42 U.S.C. § 7426(b) .......................................................................................... 12

## Regulations

89 Fed. Reg. 39,798 (May 9, 2024) ................................................................. 13

89 Fed. Reg. 38508 (May 7, 2024) .................................................................. 13

## Other Authority

U.S. Constitution .................................................................................passim

**INTRODUCTION**

By failing to confront controlling precedent, *see, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012); *United States v. Missouri*, 114 F.4th 980 (8th Cir. 2024), Minnesota's opposition brief (Opp'n) confirms that the United States has standing and is entitled to a preliminary injunction. *See also* United States' Opp'n to Mot. to Dismiss, Dkt. 40 (MTD Opp'n). Adopting Minnesota's theory, by contrast, would transform constitutional limits on a State's authority and the United States' ability to vindicate the supremacy of federal law into farce. This Court should not allow that to happen.

**ARGUMENT**

**I.    The United States is Likely to Succeed on the Merits**

Minnesota uses state law to regulate interstate emissions and change "companies' behavior on a global scale." *Minnesota by Ellison v. Am. Pet. Instit.*, 63 F.4th 703, 719 (8th Cir. 2023) (Stras, J., concurring). Courts have held that similar attempts are preempted. MTD Opp'n at 6 & n.2 (collecting cases).

Minnesota says that its lawsuit is about local deception. Opp'n at 20–23. But "[a]rtful pleading comes in many forms"—and that lawsuit "is one of them." *Minnesota*, 63 F.4th at 719; *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021) (no "local spat"). Minnesota's purported reliance on a state-law "duty" not to deceive changes nothing.  Opp'n 22. Minnesota "cannot have it both ways" by invoking a duty not to deceive "for preemption purposes"

1

and then, "for causation purposes," hinging its harms on allegedly excessive emissions. *Jesski v. Dakota, Minn. & E. R.R. Corp.*, 43 F.4th 861, 866–67 (8th Cir. 2022) ("rebrand[ing]" the alleged violated duty cannot avoid preemption). "It is precisely *because* fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'—that [Minnesota] is seeking damages." *City of New York,* 993 F.3d at 91–93. Energy producers would need "to cease global production altogether" to avoid liability. *Id.* That is a form of regulation.[1]

### A.    Uniquely Federal Interests

Our federal system does not permit certain controversies to be resolved under state law when, as here, they involve "unique federal interests." PI Mem. at 16–19. Minnesota faults the United States for failing to identify a specific constitutional provision in support. *See* Opp'n 24–26. That misses the point. "To resolve disputes about the reach of one State's power," courts often invoke "the Constitution's structure and the principles of 'sovereignty and comity' it embraces." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 (2023).

Minnesota also misapprehends this doctrine. A few areas involving "uniquely federal interests" are "so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law." *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1094

---

[1] *City of New York* also involved purported "deception." Am. Compl., *City of New York v. B.P., P.L.C.*, 2018 WL 8064051, ¶ 6 (S.D.N.Y. Mar. 16, 2018).

(2026). "[S]tate law [is] preempted when there is a 'significant conflict' between 'an identifiable federal policy or interest and the operation of state law.'" *Id.* Such is the case here. The United States has an interest in preventing conflict between the States and in its foreign affairs. PI Mem. at 16–19. Minnesota's lawsuit is irreconcilable with that interest. And "over a century" of precedent supports the United States. *City of New York*, 993 F.3d at 91.

**B.    Unconstitutional Extraterritorial Regulation**

The Constitution forbids Minnesota from circumventing territorial limits on its power and attempting to impose its own will on the Nation, which is confronted with a shared issue over interstate emissions. *See* PI Mem. 19–23.

Resisting these principles, Minnesota relies upon cases in which a state law regulated in-state conduct (*e.g.*, sale of pork) with out-of-state effects (*e.g.*, on pork producers). Opp'n 26–29. This case involves the opposite: state-law claims to leverage in-state effects (*e.g.*, flooding) to justify directly regulating out-of-state conduct (*e.g.*, oil production). *Pork Producers* aptly suggested that such an effort would violate "the territorial limits of state authority under the Constitution's horizontal separation of powers." 598 U.S. at 376 & n.1.

Nor can Minnesota resort to an exception to the rule against extraterritorial regulation, whereby States can regulate out-of-state conduct when that conduct produces, or is intended to produce, certain effects within the State.

3

Opp'n 26–29. That exception does not encompass attempts by one State to regulate an interstate or global problem arising from almost wholly extraterritorial conduct where in-state consequences are the same in kind everywhere. Rather, the effects-based exception rests on a theory of "constructive presence in a [S]tate" that requires a far closer nexus to the regulating State. *See Hyde v. United States*, 225 U.S. 347, 362 (1912). If the effects of a person's out-of-state conduct are sufficiently proximate, the person can be treated as constructively, if not actually, present in the State where the effects occur, and thus subject to that State's regulatory authority. *See, e.g.*, *Strassheim* v. *Daily*, 221 U.S. 280, 281–85 (1911) (Illinoisian could be liable under Michigan law for selling machinery to a buyer there); *Simpson* v. *State*, 17 S.E. 984 (Ga. 1893) (South Carolina shooter who fired a pistol at someone in Georgia). Such cases involve localized problems with direct, traceable, and particularized effects.

By contrast, Minnesota's invocation of the effects-based exception posits that out-of-state conduct caused alterations to the atmosphere affecting the entire planet. *See* PI Mem. 6, 25. No court has ever "held that a State may sue to abate any and all manner of pollution originating outside its borders." *Am. Elec. Power Co. v. Connecticut (AEP)*, 564 U.S. 410, 422 (2011). And Minnesota cannot distinguish in-state activities from out-of-state conduct; nor can it identify which sources caused harms. *See* PI Mem. 21–22. Minnesota thus cannot

use far downstream effects—which are an infinitesimal amount of undifferentiated alleged global harms—as a hook to impose state law on global conduct.

### C.   Clean Air Act

The Clean Air Act preempts Minnesota's attempt to impose liability for interstate emissions originating in other States. *See* PI Mem. 23–25. Given the inherently federal nature of global greenhouse gases and the national concerns they implicate, the Clean Air Act must affirmatively "authorize" state regulation of interstate air pollution. *Id.*; *accord Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 492 (1987). The Act does not permit the state-law claims here.

To evade this conclusion, Minnesota relies on an inapplicable presumption against preemption. Opp'n 30. There is no such presumption in "fields of regulation that have been substantially occupied by federal authority for an extended period of time." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005). Minnesota's preemption analysis also "is difficult to square" with the uncontested fact that "federal common law governed" interstate pollution "in the first place," and then the Act "displaced" federal common law. *City of New York*, 993 F.3d at 98. State law, in other words, has never been competent to address interstate emissions. *Id.* at 98–100. And although Minnesota asserts that the authorization rule applicable to interstate pollution explained by *City of New York* is incorrect, Opp'n 32–33, the reasoning of *City of New York*— which simply applied *Ouelette*—is sound. *See* 993 F.3d at 98–100.

5

The state-law claims are also preempted because Minnesota seeks to supplant Congress's regulatory choices in the Clean Air Act with a far-reaching scheme that would entail local courts deciding the amount of out-of-state emissions that would or would not constitute an alleged deception. That "cannot be reconciled with the decisionmaking scheme Congress enacted" in the Clean Air Act. *AEP*, 564 U.S. at 429.

### D.      Foreign Affairs Doctrine

This doctrine precludes Minnesota's lawsuit because it conflicts with foreign policy and intrudes on the field of foreign affairs. PI Mem. 25–30.

***Conflict Preemption.*** Minnesota argues that no conflict exists because it targets deception. Opp'n 33–34. But artful pleading cannot transform the lawsuit from what it really is: a liability scheme that regulates global greenhouse gas emissions and thus squarely implicates national foreign policy.

Minnesota next contends that its lawsuit doesn't "conflict with any congressionally approved foreign policy." Opp'n 34. But it is the President who has the "lead role" in foreign policy. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 415 (2003); *see id.* at 421–22 (relying on statements from persons in "high levels of the Executive Branch" to discern "evidence" that state law was in "conflict" with foreign policy interests). And the foreign affairs doctrine requires only "a conflict with federal foreign policy interests" and does not require enacted legislation endorsing that policy. *Saleh v. Titan Corp.*, 580 F.3d 1, 12–13 (D.C.

6

Cir. 2009). A "more than incidental effect in conflict with" those interests triggers preemption. *Garamendi*, 539 U.S. at 420. Properly stated, then, preemption arises when state law poses an "obstacle to the accomplishment" of foreign policy interests or "objectives," whether articulated by the Executive Branch or in statute. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).[2]

Here, Minnesota's lawsuit poses an obstacle to current U.S. foreign policy interests. *See* Landau Decl. ¶¶ 15–23; Landu Rebuttal Decl. ¶¶ 11–14. The statements from Deputy Secretary of State Landau are "entitled to deference." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33–34 (2010) (reasoning that "respect for the Government's conclusions" in a State Department official's affidavit was "appropriate"); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (observing "customary policy" to accord "deference to the President in matters of foreign affairs"); *Regan v. Wald*, 468 U.S. 222, 243 (1984) (same). By taking a different tack from the United States on global climate change, Minnesota hampers "the President's capacity" for "effective diplomacy" and "compromise[s]" his ability "to speak for the Nation with one voice in dealing with other governments." *Crosby*, 530 U.S. at 381.

Minnesota accuses the United States of misunderstanding its own foreign policy. Opp'n 15–17, 33–37. But Minnesota's lawsuit clearly conflicts with

---

[2] Minnesota cites *Medellin v. Texas*, 552 U.S. 491 (2008), but that criminal case did not involve the Foreign Affairs doctrine. *See* Opp'n 34–35.

the United States' opposition to, for example, international liability and compensation schemes by putting the United States in the untenable position of opposing such liability schemes, while Minnesota freely imposes liability on global actors operating a "global network" around the world. MTD Opp'n at 9.

Minnesota draws the wrong lesson from its observation that the United States withdrew from certain climate agreements. Opp'n 37. The lawsuit is preempted not because it prohibited the United States from withdrawing from those agreements; it is preempted because it undercuts the United States' "policy decision to abstain from international regimes that seek to impose restrictive measures to reduce global greenhouse gas emissions"—a decision that resulted in withdrawal. PI Mem. 27; *see* Landau Rebuttal Decl. ¶ 10.

***Field Preemption***. Global greenhouse gases are an international problem that are "beyond the limits of state law." *City of New York*, 993 F.3d at 85. Attempting "to set national energy policy through . . . consumer-protection laws" is not a traditional state responsibility—no matter how many times Minnesota says deception. *Minnesota*, 63 F.4th at 719. Deputy Secretary of State Landau's statements on this matter confirm that the lawsuit has had more than an incidental effect on foreign affairs. *See* Landau Rebuttal Decl. ¶ 14.

### E.   Dormant Commerce Clause

Contrary to Minnesota's argument, Opp'n 39, "discrimination is not required" when, as here, state action directly regulates transactions taking place

8

wholly outside the State. *Ass'n for Accessible Meds. v. Ellison*, 140 F.4th 957, 961 (8th Cir. 2025) (affirming preliminary injunction).

## II.   The United States Suffers Irreparable Harm Absent an Injunction

Minnesota barely contests that the United States suffers three types of irreparable harms. *See* PI Mem. 32–34. Its failure to sufficiently oppose means that the United States satisfies this element. Rather than grapple with these harms, Minnesota argues delay and relies upon unavailing declarations.

First, there is no delay. The United States has "absolute discretion" to prioritize its enforcement actions. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Here, as explained and uncontested, the United States has taken a balanced approach to the global issue of greenhouse gas emissions. PI Mem. at 12–13, 34–36. Because the federal sovereign is entitled to address problems "pragmatic[ally]," *id.*—including when the lawsuit here could have been dismissed by appellate proceedings and has barely matured—there is no delay. *See Sleep No. Corp. v. Young,* 532 F. Supp. 3d 793, 803–04 (D. Minn. 2021) (alleged delay "does not negate a finding of irreparable injury" when it is "explainable").

By relying on private-party cases, Minnesota misapprehends the nature of sovereign harm. Opp'n 8–11. Minnesota cites no on-point cases because "exercis[ing] a sovereign right" is not the same as "a private right." *United States v. Hamed*, 976 F.3d 825, 831 (8th Cir. 2020) (no laches against United States).

9

There is no time bar to exercising such a sovereign right. Moreover, intervening events—including nearly 60 state and local governments pursuing climate lawsuits since 2020—make the current situation untenable. *See* MTD Opp'n 5. And if Minnesota were right, then the United States would have been helpless to erase decades of unlawful discriminatory practices. But that is not the law. *See United States v. City of Jackson, Miss.*, 318 F.2d 1 (5th Cir. 1963) (granting injunction to redress longstanding discrimination). Finally, Minnesota's lawsuit harms the United States now because it impedes the uncontested "broad discretion" the United States exercises here concerning interstate emissions. *Arizona*, 567 U.S. at 395–97; *see also* MTD Opp'n at 32–35.

Second, Minnesota relies upon unpersuasive declarations. Opp'n at 13–17. As an initial matter, no declarant has personal knowledge of current federal policy. That one presidential administration prioritizes other interests, *Garamendi*, 539 U.S. at 414 (Executive Branch decides the policy), or is unbothered by violations of federal law, *City of Jackson*, 318 F.2d 1, cannot shield that conduct. The declarations also assume that Minnesota is targeting local conduct—yet none refutes that one State regulating or imposing liability for interstate emissions undermines federal law or interests. Finally, the declarants improperly offer legal testimony. *See, e.g.*, Stern Decl. ¶ 18 (testifying as to "injury-in-fact"). This Court could strike the declarations on these bases.

Beyond these facial issues, the declarations of the former officials are

10

flawed. Concerning foreign affairs, the Supreme Court has rejected the premise that other countries understand American federalism and therefore States may pursue actions that interfere with the Nation's ability to speak with "one voice." *Compare Garamendi*, 539 U.S. at 401, *with* Sullivan Decl. ¶¶ 12–18. If Mr. Sullivan's assertions were taken seriously, there would be no Foreign Affairs preemption doctrine. And the risk of retaliation or imitation amounts to irreparable harm. *Compare* Opp'n 37, *with Arizona*, 567 U.S. at 395 ("may lead to harmful reciprocal treatment").

Mr. Stern, who was a climate change negotiator years before Minnesota sued, is also mistaken. Stern Decl. ¶ 2. Contrary to Mr. Stern, *see id.* ¶¶ 17 & 24, the United States does not take a "state-centric" approach to climate change diplomacy (or foreign relations generally). *See* Landau Rebuttal Decl. ¶¶ 3–8; *accord Garamendi*, 539 U.S. at 416 ("distinction does not matter" between "corporations" and "foreign governments" in foreign affairs). Nations obviously care about promoting the interests of their corporate citizens, including when they may be held liable to legal claims in foreign countries. "Quite simply, if Minnesota's case is enforceable, then the United States has less to offer and less economic and diplomatic leverage as a consequence to address the issues concerning global greenhouse gas emissions." *Id.* ¶ 12.

Concerning the Clean Air Act, courts find irreparable harm where, as here (Szabo Decl. ¶¶ 17–18), regulatory uncertainty results in adverse effects.

11

*Compare* Opp'n 13, *with Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 475 (D.R.I. 2025), *appealed filed* No. 25-1428 (1st Cir. 2025) (uncertainty caused irreparable harm). Minnesota is also wrong to argue that a federal agency must point to interference over a specific regulation before claiming irreparable harm. *See* Opp'n 13. Harms to an agency's regulatory remit (including its discretion *not* to act) implicate irreparable harm. *Arizona*, 567 U.S. at 395–98 (undermining agency discretion).

The declaration provided by Mr. Goffman is off base. In the first instance, his claim that "EPA does not have exclusive authority" over interstate emissions, Goffman Decl. ¶¶ 15–18, misconstrues statutory provisions that *expand*, rather than *restrict*, EPA's authority over such emissions. *See, e.g.*, 42 U.S.C. §§ 7410(a)(2)(D)(i)(I) & (k) (requiring EPA approval of "good neighbor" submissions and, in the event of disapproval, promulgation of a federal plan), 7426(b) (authorizing EPA to find that additional controls are required because of interstate impacts), 7415 (similar). His made-for-litigation claim that cost consideration is limited to the cost of a particular emissions control and "unrelated to the expenses companies otherwise bear," Goffman Decl. ¶ 28, contradicts decades of federal practice and case law. *See, e.g.*, 42 U.S.C. §§ 7411(a)(1) ("taking into account the cost of achieving" reduction of emissions); 7412(d)(2) (considering "the cost of achieving such emissions reduction"); 7412(d)(6) (similar);

12

*NRDC v. EPA*, 749 F.3d 1055, 1060–61 (D.C. Cir. 2014) (Kavanaugh, J.) (recognizing "EPA's authority to consider cost-effectiveness").

In fact, EPA considered market conditions while Mr. Goffman worked there. For example, EPA relied on financial and market conditions of regulated parties when promulgating major rules related to interstate emissions. *See, e.g.*, 89 Fed. Reg. 39,798, 39,800 & 39,816–17 (May 9, 2024) (assessing capital expenditures, capital costs, and cost-reasonableness in support of greenhouse gas regulations). Indeed, "EPA considers costs in various ways, depending on the rule and affected sector," including how additional regulation would affect financial positions of commercial entities. 89 Fed. Reg. 38508, 38532–33 (May 7, 2024). Above all, EPA has considered how State climate actions affect its regulations for greenhouse gas emissions. *See* 89 Fed. Reg. 39,798, 39820–22.

In other respects, Mr. Goffman rehashes legal positions rejected by courts. For example, EPA took the position that broader financial conditions were irrelevant to deciding small refinery exemptions, *cf.* Goffman Decl. ¶ 36, but the D.C. Circuit vacated exemption denials for ignoring the breadth of statutory text. *See Sinclair Wyo. Refin. Co. LLC v. EPA*, 114 F.4th 693, 700 (D.C. Cir. 2024) (per curiam) (vacating decision related to the Renewable Fuel Standard program since it overlooked "economic hardship" of commercial entities).

At bottom, it would be antithetical with precedent to credit the flawed assertions of former government officials who have no personal knowledge of

13

current federal policy and who assume the premise of an artfully pleaded law-suit, while discrediting the statements of current high-ranking federal officials testifying about current interference. *See Holder*, 561 U.S. at 33–34.

## III.   The Equities and Public Interest Favor the United States

The equities favor the United States. PI Mem. 34–36. In response, Minnesota invokes abstention principles, but they don't apply because Minnesota itself has caused conflict between the "state and federal" government. *Trump v. Vance*, 941 F.3d 631, 637–39 (2d Cir. 2019); *see also* MTD Opp'n at 41–42 (policy inapplicable). The need to vindicate the supremacy of federal law and redress sovereign harm is far from "illusory" here. Opp'n 41. Doing so will advance a bedrock constitutional principle. *See* U.S. Const. Art. VI, cl. 2.

## CONCLUSION

This Court should grant the motion.

14

Dated: June 29, 2026                   Respectfully submitted,

DANIEL N. ROSEN                        STANLEY E. WOODWARD JR.
United States Attorney                 United States Associate Attorney General
600 U.S. Courthouse
300 South Fourth Street                ADAM R.F. GUSTAFSON
Minneapolis, MN 55415                  Principal Deputy Assistant Attorney General
                                       Environment and Natural Resources Division

                                       ROBERT N. STANDER
                                       Deputy Assistant Attorney General
                                       Environment and Natural Resources Division


                                       s/ John Adams
                                       JOHN K. ADAMS
                                       Deputy Associate Attorney General
                                       MICHAEL WEISBUCH
                                       Senior Counsel
                                       Office of the Associate Attorney General
                                       U.S. Department of Justice
                                       950 Pennsylvania Ave., NW
                                       Washington, D.C. 20530
                                       Telephone: 202-514-9500
                                       Email John.Adams3@usdoj.gov

                                       IAN M. SWENSON
                                       Counsel
                                       Environment and Natural Resources Division
                                       950 Pennsylvania Ave., NW
                                       U.S. Department of Justice
                                       Washington, D.C. 20530

15